758 A.2d 928 (2000)
CITISTEEL USA, INC., a Delaware corporation, Defendant-Below, Appellant,
v.
CONNELL LIMITED PARTNERSHIP, Luria Brothers Division, a Delaware limited partnership, Plaintiff-Below, Appellee.
No. 228,1999.
Supreme Court of Delaware.
Submitted: July 25, 2000.
Decided: August 11, 2000.
Edward M. McNally, Esquire of Morris, James, Hitchens & Williams, LLP, Wilmington, Delaware, for Appellant.
Steven J. Balick, Esquire of Ashby & Geddes, Wilmington, Delaware, for Appellee.
Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.
*929 PER CURIAM:
In this appeal we affirm the judgment of the Superior Court entered on a jury verdict following the Court's denial of defendant's motion for directed verdict and post-trial motion for judgment as a matter of law. The Superior Court had determined that genuine issues of material fact existed for the jury to consider concerning the contractual issues of (i) accord and satisfaction, and (ii) repudiation. We are asked to decide whether the Superior Court erred when it submitted these issues to the jury. We find that it did not.

Facts
CitiSteel USA, Inc. ("CitiSteel"), operates a plate steel manufacturing plant in Claymont, Delaware. CitiSteel contracted with Connell Limited Partnership, Luria Brothers Division ("Luria") to act as the scrap handler at CitiSteel's plant. In addition to providing the operational services at the plant, Luria, at its own expense, was to renovate the facility, which had fallen into a state of disrepair, in order to allow CitiSteel to conserve money for operational expenses. To recapture its capital contribution, Luria needed the security of a set fee schedule and contract duration to assure the recovery of its capital over the course of the project.
On February 2, 1989, Luria and CitiSteel met at CitiSteel's offices in Claymont. Following six hours of negotiations, an oral agreement was reached. The material terms of this agreement included a price of $27.55 per ton over a five-year period and the obligation to sign a written contract with these terms. Relying upon CitiSteel's promise to promptly prepare and execute a written agreement, Luria agreed to initiate the work without a written contract.
Luria initiated the work, but CitiSteel did not prepare and execute a written contract as promised from the time of the *930 February 2, 1989 meeting until Luria walked off the job seven months later. The events during these months included Luria's repeated, but unsuccessful, efforts to get a written agreement in place. In late spring or early summer, CitiSteel became deficient in its payment of monthly invoices. CitiSteel's failure to enter a written agreement and to pay its bills caused the relationship between Luria and CitiSteel to deteriorate.
In a final attempt to salvage the relationship, Luria, on September 6, 1989, offered a compromise to reduce past invoices through July 1989. The compromise provided that if CitiSteel immediately paid the reduced amount of $112,931, CitiSteel would be current through the end of July 1989. In other words, CitiSteel's payment was to satisfy invoices for the first six months of the job. On September 7, 1989, CitiSteel made payment of the $112,931.
Following this compromise, Luria continued to work with CitiSteel to secure a written agreement, but to no avail. As a consequence, Luria's management decided to leave the project. On September 21, 1989, Luria's president sent CitiSteel a letter indicating Luria's intention to cease operations and to close at the end of the business day. Shortly thereafter, Luria filed suit against CitiSteel.

Procedural History
On March 22, 1999, following the third jury trial in this case, a jury returned a verdict in favor of Luria against CitiSteel in the amount of $639,136. The Superior Court ultimately entered an adjusted $1,254,255.40 judgment to reflect pre-judgment interest.
On appeal, CitiSteel argues that the Superior Court erred as a matter of law when it denied CitiSteel's motion for a directed verdict and post-trial motion for judgment as a matter of law. CitiSteel contends that no issues of material fact existed for the jury to consider on the following questions: (1) whether CitiSteel's September 7, 1989 payment of $112,931 constituted an accord and satisfaction extinguishing its obligation to enter into a written agreement, and (2) whether Luria's September 21, 1989 letter constituted a repudiation precluding it from later declaring a default against CitiSteel.
This Court reviews de novo the Superior Court's decision to deny CitiSteel's directed verdict motion and its post-trial motion for judgment as a matter of law. In reviewing the Superior Court's decision, we consider whether the evidence and all reasonable inferences that can be drawn therefrom, taken in the light most favorable to Luria, raise an issue of material fact for the jury to consider.[1] The question of whether the court erred depends upon whether, under any reasonable view of the evidence, a jury could have found for the plaintiff.[2]

Accord and Satisfaction
The question of whether CitiSteel's $112,931 payment constituted an accord and satisfaction extinguishing all of its obligations under the February 2, 1989 *931 agreement was properly submitted to the jury.[3] Under Delaware law, parties to an original contract "may agree that a mere subsequent contract to perform some specified act will be accepted in full performance and satisfaction of the pre-existing duty."[4] If the parties intend for the new agreement to abrogate the former contract, the parties may seek remedies only under the latter agreement. Determining such intent is usually a question of fact. If intent cannot be determined "expressly or impliedly" from the contract provisions, the court may consider evidence of the surrounding circumstances.[5] This Court has articulated the elements of accord and satisfaction as follows:
The elements necessary for a common law accord and satisfaction are: (1) that a bona fide dispute existed as to the amount owed that was based on mutual good faith; (2) that the debtor tendered an amount to the creditor with the intent that payment would be in total satisfaction of the debt; and (3) that the creditor agreed to accept the payment in full satisfaction of the debt.[6]
Differing from the above scenario, this case involves an original agreement with multiple obligations or promises.
Even if CitiSteel's payment constituted an accord and satisfaction that extinguished CitiSteel's obligations under past invoices through July 1989, it is unlikely that this payment extinguished CitiSteel's obligation to enter a written agreement. The record contains strong evidence suggesting that CitiSteel's payment did not extinguish its obligation to enter into a written agreement. No specific language from Luria's September 6, 1989 letter can reasonably be construed as an offer to satisfy all of CitiSteel's obligations under the earlier agreement. Furthermore, we are not convinced that Luria intended for this payment to have such a broad effect, especially where Luria would have had little, if any, incentive to incur the massive expense needed to jumpstart the project without the security provided by a written agreement. The recoupment of Luria's capital contribution depended on a written agreement memorializing a certain price structure over a five-year term. In short, we conclude that the effect of CitiSteel's payment was a disputed factual issue that was properly submitted to the jury.

Repudiation
The question of whether Luria's September 21, 1989 letter constituted a repudiation precluding it from later declaring a default against CitiSteel was properly submitted to the jury.[7] Under Delaware law, repudiation is an outright refusal by a party to perform a contract or its conditions entitling "the other contracting party to treat the contract as rescinded."[8] A statement not to perform unless terms different from the original contract are met also constitutes a repudiation.[9]
Luria's September 21, 1989 letter can be interpreted in either of two ways. One interpretation is that the letter was a repudiation, and the so-called demands at the *932 end of the letter were new terms not included in the original contract. Another plausible and perhaps more reasonable interpretation is that, at the time of the letter, CitiSteel had already materially breached the original agreement, thereby excusing Luria from its obligations to perform. In this latter scenario, the so-called demands made at the end of the letter are simply statements of what would be needed for Luria to enter a new contract with CitiSteel in the future.
It seems unjust and illogical to preclude Luria from recovery under the terms of the earlier agreement where the record shows that Luria continued to operate in good faith incurring losses while CitiSteel failed to meet its obligations under the earlier agreement. In any event, the record reflects substantial evidence supporting a verdict in favor of Luria on the issue of repudiation. Accordingly, this issue was properly submitted to the jury.

Conclusion
On the basis of the foregoing, we conclude that the Superior Court's denial of CitiSteel's motion for directed verdict and post-trial motion for judgment as a matter of law was correct. Accordingly, the judgment of the Superior Court is affirmed.
This case is primarily about a finite sum of money involving only peripherally some uncomplicated questions of law. This Court inquired of the lawyers at oral argument why this case had not been settled. The lawyers on both sides agreed that, as members of the Bar, they had tried to persuade the principals to settle, but to no avail. We commend the lawyers for their professionalism in trying to achieve a settlement. At the same time, we regret that the principals were unable to bring themselves to agree to a compromise that would have avoided repeated use of the courts' resources. Nevertheless, we trust that this is the end of the case.
NOTES
[1] See Russell v. Kanaga, Del.Supr., 571 A.2d 724, 731 (1990); see also Eustice v. Rupert, Del.Supr., 460 A.2d 507, 508 (1983).
[2] Superior Court Civil Rule 50(a) explains when a court can grant judgment as a matter of law:

(a) Judgment as a matter of law. (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to the claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
Super. Ct. Civ. R. 50(a); see also Duphily v. Delaware Elec. Coop., Del.Supr., 662 A.2d 821, 836 (1995) (citing Parks v. Ziegler, Del. Supr., 221 A.2d 510 (1966)) (concluding that a plaintiff's claim challenging the trial court's decision to deny his motion for directed verdict was without merit).
[3] "An accord is a contract through which the obligee promises to accept a stated performance in satisfaction of the obligor's existing duty." Restatement (Second) of Contracts § 281 (1981).
[4] Empire Box Corp. v. Jefferson Island Salt Mining, Co., Del.Supr., 36 A.2d 40, 43 (1944) (citations omitted).
[5] See id.
[6] Acierno v. Worthy Bros. Pipeline Corp., Del. Supr., 693 A.2d 1066, 1068 (1997) (footnote omitted).
[7] "A repudiation is a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages of total breach. . . ." Restatement (Second) of Contracts § 250 (1981).
[8] Sheehan v. Hepburn, Del.Ch., 138 A.2d 810, 812 (1958) (citation omitted).
[9] See Johnson Forge Co. v. Leonard, Del.Supr., 51 A. 305, 307-08 (1902).