# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-17-00722-CV

**Appellants, Raymond Boytim, Hugh Duncan, Walter Schwimmer, the Edward J. Goodman Life Income Trust and the Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen, and Howard Weissberg // Cross-Appellants, Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen P. Reynolds, Stephen C. Hurley, Hobart A. Smith, Scott W. Tinker, Statoil ASA, and Fargo Acquisition, Inc.**

**v.**

**Appellees, Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen C. Hurley, Stephen P. Reynolds, Hobart A. Smith, Scott W. Tinker, Statoil ASA, and Fargo Acquisition, Inc. // Cross-Appellees, Raymond Boytim, Hugh Duncan, Walter Schwimmer, the Edward J. Goodman Life Income Trust and the Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen, and Howard Weissberg**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-11-003205, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated November 20, 2018 and substitute the following opinion and judgment in their place, and we overrule appellants' motion for rehearing.

This is an interlocutory appeal of an order of the trial court denying a motion to certify a class filed by Plaintiffs—Raymond Boytim, Hugh Duncan, Walter Schwimmer, the Edward J. Goodman Life Income Trust, the Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen,

and Howard Weissberg (collectively, appellants). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3) (permitting interlocutory appeal of order refusing to certify class); Tex. R. Civ. P. 42 (outlining procedures and requirements for class certification). Appellants filed suit against appellees Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen C. Hurley, Stephen P. Reynolds, Hobart A. Smith, Scott W. Tinker, Statoil ASA, and Fargo Acquisition, Inc. for breach of fiduciary duty in connection with the sale of Brigham Exploration Company (Brigham). Appellees have filed a conditional cross-appeal "to the extent necessary to preserve all arguments for affirming the trial court's order" in the event that this Court disagrees with the particular grounds reflected in the trial court's order. For the following reasons, we will affirm the trial court's order denying class certification.

## BACKGROUND

This appeal is the third time that the issue of class certification in this dispute has been before this Court, and because the factual background is summarized in those opinions, we will recite it only briefly here. *See Brigham Expl. Co. v. Boytim*, No. 03-15-00248-CV, 2016 WL 3390287 (Tex. App.—Austin June 15, 2016, no pet.) (mem. op.) (*Brigham II*); *Brigham Expl. Co. v. Boytim*, No. 03-13-00191-CV, 2014 WL 4058965 (Tex. App.—Austin Aug. 15, 2014, no pet.) (mem. op.) (*Brigham I*); *see also* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").

The dispute underlying this lawsuit stems from the sale of Brigham, a Delaware public corporation headquartered in Texas, to Statoil ASA, a Norwegian multinational oil and gas

company, via a cash tender offer of $36.50 per share. Appellants, who allegedly continuously held some amount of Brigham stock from before the announcement of the acquisition through the close of the deal, allege that the now-former members of Brigham's board of directors breached their fiduciary duties under Delaware law by agreeing to and effectuating the cash-out merger—specifically by engaging in self-dealing, "consciously disregarding" the company's value, agreeing to inadequate consideration for the company, and taking "unreasonable steps to ensure consummation" of the deal by agreeing to a number of "problematic deal protection devices" in the acquisition agreement. They also allege that Brigham and Statoil aided and abetted the board members' breaches of fiduciary duties in connection with the buyout and that Brigham failed to disclose material information and disclosed materially false and misleading information to the stockholders in its required SEC filings issued in conjunction with the merger. Appellees (Defendants below) assert numerous affirmative defenses including, relevant here, ratification, acquiescence, estoppel, waiver, and accord and satisfaction.

Shortly after filing suit, Plaintiffs moved, for the first time, for class certification. The trial court signed an order granting class certification, but this Court reversed the order on appeal, determining that the trial plan was insufficient. *See Brigham I*, 2014 WL 4058965, at *4. After remand, Plaintiffs renewed their motion, and the trial court entered a subsequent order granting class certification. This Court again reversed, holding that the class was not sufficiently defined because it included members who lack standing. *See Brigham II*, 2016 WL 3390287, at *7. After a second remand, Plaintiffs again renewed their motion.

In support of their renewed motion, Plaintiffs submitted a proposed trial plan with a revised class definition: "All holders of Brigham common stock who held continuously from 7:00

3

p.m. CST on October 16, 2011 through the effective time of the merger with Statoil." They also proposed a subclass: "All holders of Brigham common stock who held continuously from 7:00 p.m. CST on October 16, 2011 through the effective time of the merger with Statoil and did not tender their shares in Statoil's offer, but who were automatically cashed out when the merger was consummated." Other than this change to the class definition, Plaintiff's proposed trial plan remained largely unchanged from their previous one.

This third time, however, the trial court denied the motion to certify, on the following grounds: (1) "the Court cannot determine that the common issues predominate over the individual issues" and (2) "the Court cannot determine whether class action is superior to individual actions to achieve a fair and efficient adjudication of the controversy." *See* Tex. R. Civ. P. 42(b)(3). The trial court's Order Denying Plaintiffs' Renewed Motion for Certification (Order) recited in relevant portions:

> The Court cannot determine that the issues common to class members predominate over individual issues. . . . [T]he most-effort intensive issues identified . . . cover issues both in common among the proposed class members and issues unique to each proposed class member. The intentions and actions of the individual class members may become a focus of the controversy as many of Defendants' defenses turn on certain actions made by a class member, which could demonstrate agreement or ratification of the merger. Because the case may focus on issues individual to the class members, the Court cannot determine that the common issues predominate over the individual issues.

> The Court cannot determine that class action is the superior method for fair and efficient adjudication of the controversy. Plaintiffs argue that, for many class members, class action would be the only mechanism to resolve their controversy, given the small amount of damages at issue for these class members. Plaintiffs additionally attempt to quantify the class members by analyzing the number of shares that may qualify the shareholders as class members. Defendants argue that Plaintiffs have not shown that the number of potential class members would render traditional litigation

4

inefficient or unfair. They also argue that the number of potential shares that would qualify shareholders as a class member does not correspond to a number of potential class members.

The number of shares that would fit under the proposed class definition does not necessarily correspond to the number of potential class members. Also, in situations where class members are holders of large amounts of shares, the value of the class action versus individual action is minimized as the potential damages at issue become larger. Because the Court cannot determine the estimated number of potential class members or the estimated value of a class members' damages claim, the Court cannot determine whether class action is superior to individual actions to achieve a fair and efficient adjudication of the controversy.

Appellants contend on appeal that the trial court abused its discretion in denying their motion to certify.

## STANDARD OF REVIEW

Appellate courts review a class-certification order for abuse of discretion. *Bowden v. Phillips Petrol. Co.*, 247 S.W.3d 690, 696 (Tex. 2008); *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Bowden*, 247 S.W.3d at 696. A trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure by the court to correctly analyze or apply the law will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

A party seeking to reverse an order denying class certification must demonstrate that Rule 42's requirements are satisfied and that the "trial court's refusal to certify the class was legally unreasonable under the facts and circumstances of the case." *Ridgeway v. Burlington N. Santa Fe Corp.*, 205 S.W.3d 577, 581 (Tex. App.—Fort Worth 2006, pet. denied). "Actual conformance

with Rule 42 is indispensable, and compliance with the rule must be demonstrated, not presumed." *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007).

"Even if certification would have been proper, a denial may still not be an abuse of discretion," *see Vinson v. Texas Commerce Bank-Hous., Nat'l Ass'n*, 880 S.W.2d 820, 824 (Tex. App.—Dallas 1994, no writ), because "[s]o long as the trial court acted rationally in the exercise of its discretion, [a Texas court of appeals] will uphold its ruling denying certification," *City of Aledo v. Brennan*, No. 02-14-00147-CV, 2016 WL 3157354, at *5 (Tex. App.—Fort Worth June 2, 2016, pet. denied) (mem. op.). The Texas Supreme Court has rejected a "certify now and worry later" approach. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000).

## DISCUSSION

It is undisputed in this case that while Delaware substantive law governs Plaintiffs' claims, Texas procedural law governs class certification. *Brigham II*, 2016 WL 3390287, at *5. Under Texas law, "there is no right to litigate a claim as a class action." *Bernal*, 22 S.W.3d at 439. "Rather, Rule 42 provides only that the court may certify a class action if the plaintiff satisfies the requirements of the rule." *Id.* For this reason, a party seeking to reverse an order denying class certification faces a "formidable task." *Ridgeway*, 205 S.W.3d at 581; *see Solotko v. LegalZoom.com, Inc.*, No. 03-10-00755-CV, 2013 WL 3724770, at *3 (Tex. App.—Austin July 11, 2013, pet. denied) (mem. op.). Plaintiffs bore the burden of establishing the prerequisites for class treatment. *Lapray*, 135 S.W.3d at 672.

All class actions must satisfy the four threshold requirements contained within Rule 42(a) of the Texas Rules of Civil Procedure: (1) numerosity ("the class is so numerous that joinder

6

of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Tex. R. Civ. P. 42(a)(1)–(4); *see Bernal*, 22 S.W.3d at 433. In addition to the subsection (a) prerequisites, class actions also must satisfy at least one of the subdivisions of Rule 42(b). *See* Tex. R. Civ. P. 42(b) (directing that only certain kinds of actions can be class actions); *Bernal*, 22 S.W.3d at 433.

Appellants assert that, contrary to the determinations made in the trial court's Order, this class action satisfies Rule 42(b)(3), which requires (1) common questions of law or fact to predominate over questions affecting only individual members and (2) class treatment to be "superior to other available methods for the fair and efficient adjudication of the controversy." Tex. R. Civ. P. 42(b)(3); *Bernal*, 22 S.W.3d at 432. Because it was Plaintiffs' burden to satisfy each prerequisite, to prevail on appeal they must show that the trial court's ruling was erroneous as to each one. We begin by considering whether the trial court abused its discretion in determining that Plaintiffs did not meet their burden to establish predominance.

### *Predominance*

Courts determine whether common issues predominate by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are, in fact, those common to the class. *Bernal*, 22 S.W.3d at 433–34 (noting that predominance requirement is "one of the most stringent prerequisites to certification" and is "far more demanding than the commonality requirement")

(internal quotes omitted); *see also Stonebridge Life Ins.*, 236 S.W.3d at 205 ("Because predominance is one of the most stringent prerequisites to class-action certification, it is considered first in our review and must be rigorously applied."). "The test for predominance is not whether common issues outnumber uncommon issues but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Bernal*, 22 S.W.3d at 434 (quoting *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 610 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.)).

Significantly here, in its Order the trial court determined that the following are "issues of law or fact affecting only individual class members"

- whether any class members ratified the transaction at issue after the fact and whether any such ratification was fairly accomplished;

- whether any class members assented to the transaction at issue, by words or conduct, during the progress of the transaction;

- whether any class members intended their acceptance of the tender or cash-out price to be in total satisfaction of their claims relating to the transaction at issue;

- whether any class members were aware of their claims relating to the transaction at issue and intended to waive those claims;

- whether any class members engaged in conduct that intentionally or unintentionally led Brigham or Statoil to change their position to their detriment; and

- what damages, if any, each class member suffered as a result of any such breach of fiduciary duty or aiding and abetting of any such breach of fiduciary duty.

8

The trial court further determined that the above issues, as well as those relating to whether Defendants breached their fiduciary duties and aided and abetted such breaches, "will be the object of most of the efforts of the litigants and the court." In considering whether the common issues "do or do not predominate over individual issues," the court concluded that it "cannot determine that the issues common to class members predominate over individual ones" because "[t]he intentions and actions of the individual class members may become a focus of the controversy as many of Defendants' defenses turn on certain actions made by a class member, which could demonstrate agreement or ratification of the merger."

The trial court's Order cited the elements of each of appellees' affirmative defenses under Delaware law. *See Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (acquiescence); *Amirsaleh v. Board of Trade*, 27 A.3d 522, 529–30 (Del. 2011) (waiver); *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005), *aff'd*, 884 A.2d 512 (Del. 2005) (equitable estoppel); *CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000) (accord and satisfaction); *O'Malley v. Boris*, No. Civ.A-15735-NC, 2002 WL 453928, at *5 n.28 (Del. Ch. Mar. 18, 2002) (ratification). Common to two of the defenses (waiver and accord and satisfaction) is the element of the claimant's intent to waive or satisfy a debt or a claim. *See Amirsaleh*, 27 A.3d at 529–30; *CitiSteel USA*, 758 A.2d at 931. Common to all of the defenses is the element that the claimant took some action justifying application of the defense or abrogating the claimant's right to make a claim. *See Klaassen*, 106 A.3d at 1047; *Amirsaleh*, 27 A.3d at 529–30; *Nevins*, 885 A.2d at 249; *CitiSteel USA*, 758 A.2d at 931; *O'Malley*, 2002 WL 453928, at *5 n.28. It is largely due to these stockholder-specific elements that the trial court determined that "[t]he intentions and actions of the

9

individual class members may become a focus of the controversy," to be determined by the evidence at trial.

We begin by noting that the supreme court has specifically condoned the analysis of the trial court here: "If it is not determinable from the outset that the individual issues can be considered in a manageable, time-efficient, yet fair manner, then certification is not appropriate." *Bernal*, 22 S.W.3d at 436; *see General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 959 (Tex. 1996) ("[T]he trial court [found] that 'there is uncertainty as to whether a class action could be properly certified and maintained through trial because there are potentially substantial individual questions of fact and law and obstacles to the manageability of the action on a class basis.' If the trial court believed this to be the case, it should not have certified the class . . . ."). We therefore consider whether the trial court reasonably concluded that there are potentially substantial individual questions of law or fact that precluded it from determining whether common issues predominate. *See Ridgeway*, 205 S.W.3d at 581.

Appellants contend that the trial court abused its discretion in making the erroneous "legal determination" that appellees' affirmative defenses under Delaware substantive law "create the need for individual inquiries at trial." *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) ("Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo."); *Walker*, 827 S.W.2d at 840 (noting that trial court has no discretion in determining "what the law is or applying the law to the facts"); *see also Lapray*, 135 S.W.3d at 672 (noting that trial courts must determine underlying substantive law prior to certification "as courts can hardly evaluate

10

the claims, defenses or applicable law without knowing what the law is"). Appellants support their argument on this issue by asserting that "all individualized affirmative defenses are necessarily subsumed within their claim for nondisclosure in SEC filings informing stockholders of the proposed merger" and that Delaware law forecloses any inquiry into individual intent or action of the stockholders.

Specifically, appellants argue that if Brigham's SEC filings adequately disclosed all material facts, "plaintiffs' claims for breach of duty fail and defendants are entitled to judgment on all of plaintiffs' claims" under Delaware's business-judgment rule because a majority of disinterested stockholders approved the merger by tendering their shares. *See Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304, 312–13 (Del. 2015) (noting that, "when a transaction is not subject to the entire fairness standard, the long-standing policy of [Delaware] law has been to avoid the uncertainties and costs of judicial second-guessing when the disinterested stockholders have had the free and informed chance to decide on the economic merits of a transaction for themselves"); *In re Volcano Corp. Stockholder Litig.*, 143 A.3d 727, 746–47 (Del. Ch. 2016) (applying business-judgment rule presumption to tender offers and holding that acceptance of tender by fully informed, disinterested, uncoerced majority of stockholders had same "cleansing" effect under *Corwin* as vote in favor of merger by fully informed, disinterested stockholder majority); *see also In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 1003 (Del. Ch. 2014) (holding that "business judgment standard of review" applied to merger because it was approved by majority of disinterested shareholders in fully informed vote, insulating transaction from all claims except ground of waste). On the other hand, if Brigham's SEC filings did not disclose all material facts, appellants contend that "Plaintiffs will

11

prevail on their non-disclosure claims and will negate an essential element of [all of Defendants'] affirmative defenses—i.e., that Brigham's shareholders had full knowledge of all material facts surrounding the acquisition." Either way, appellants continue, there would be no need to inquire into individual class members' "actions and intentions" with respect to appellees' affirmative defenses.

However, appellants' argument presumes that the business-judgement rule is the applicable standard by which the court will scrutinize Defendants' actions, but there are other possible "standards of review" that may apply, depending on development of the facts at trial. *See ACP Master, Ltd. v. Sprint Corp.*, No. Civ.A-8508–VCL, 2017 WL 3421142, at \*16 (Del. Ch. July 21, 2017) ("To determine whether a corporate fiduciary has breached its duties, a court examines the fiduciary's conduct through the lens of a standard of review."); *Calesa Assocs., L.P. v. American Capital, Ltd.*, No. Civ.A-10557–VCG, 2016 WL 770251, at \*9-11 (Del. Ch. Feb. 29, 2016) ("[A] plaintiff can overcome [the business-judgment rule presumption] by adequately alleging facts to support a reasonable inference that '(1) a controlling stockholder stands on both sides of a transaction or (2) at least half of the directors who approved the transaction were not disinterested or independent.'") (quoting *In re KKR*, 101 A.3d at 990)). The "entire fairness" standard and the "gross negligence" standard would hold Defendants to a higher standard than the business-judgment rule and would not extinguish all of Plaintiffs' claims even if the SEC filings had disclosed all material facts. *See In re Zale Corp. Stockholders Litig.*, No. Civ.A-9388–VCP, 2015 WL 6551418, at \*3 (Del. Ch. Oct. 29, 2015) (holding, post-*Corwin*, that "when reviewing a board of director's actions during a merger process after the merger has been approved by a majority of disinterested stockholders in a fully informed vote, the standard for finding a breach of the duty of care under [the

business-judgment rule] is gross negligence"); *In re Orchard Enters., Inc. Stockholder Litig.*, 88 A.3d 1, 24 (Del. Ch. 2014) ("When a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness, with the defendants having the burden of persuasion.") (quoting *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1239 (Del. 2012)); *see also In re TIBCO Software, Inc. Stockholders Litig.*, No. Civ.A-10319–CB, 2015 WL 6155894, at \*23–24 (Del. Ch. Oct. 20, 2015) (denying defendants' motion to dismiss after finding it "reasonably conceivable" that directors had breached duty of care by acting in grossly negligent manner, despite absence of any indication that merger was not approved of by majority of disinterested stockholders in fully informed vote); *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005) (noting that when analyzing claim for breach of duty of care, Delaware courts apply standard of "gross negligence," which has been defined as "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason"). Whether the entire-fairness standard or the gross-negligence standard would apply depends on, respectively, whether the challenged actions were taken by controlling stockholders or were taken in reckless indifference to the body of stockholders. *See In re Orchard Enters.*, 88 A.3d at 24; *Benihana*, 891 A.2d at 192; *see also Calesa Assocs.*, 2016 WL 770251 at \*9-11 (noting that stockholder is "controlling" if it "owns a majority interest in or *exercises control* over the business affairs of the corporation" and that determination of whether party is controlling is "a highly fact specific inquiry").

Plaintiffs' petition alleges that Defendants have breached their duties of care and other fiduciary obligations by acting in a "willful, wanton and reckless manner" and engaging in self-dealing, financially benefitting themselves personally at the expense of stockholders generally

13

by approving the merger and, thus, operating as "interested" parties. *See In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 44–45 (Del. Ch. 2013) (noting that entire-fairness standard is Delaware's "most onerous" standard and applies when "board labors under actual conflicts of interest," requiring defendants to "establish 'to the court's satisfaction that the transaction was the product of both fair dealing *and* fair price'") (quoting *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1163 (Del. 1995))); *see also Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) ("A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders."). Plaintiffs' petition also alleges that Defendants—directors and corporate officers who approved the challenged transaction—were "controlling" in that they exercised control over the corporation's business affairs and, specifically, the structuring and approval of this transaction. Yet, at this relatively early stage in the proceedings—when the facts have not yet been tried—we cannot determine which Delaware "standard of review" will apply to Defendants' alleged conduct, which determination will affect whether Plaintiffs may proceed on their claims other than non-disclosure.

It is possible, under the pleaded facts, that a standard other than the business-judgment rule will apply, in which case a factfinder could find that appellees' SEC filings were not misleading and adequately disclosed all material information and that appellees nonetheless breached their duty of care or other fiduciary duties to stockholders, in which case appellees' affirmative defenses would be at issue as to those claims. And in that event, under Delaware law, the affirmative defenses of waiver and accord and satisfaction raised here would likely require inquiries at trial as to individual stockholders' intent when tendering or selling some or all of their shares, which could potentially turn on a determination of the number of shares that each individual

14

stockholder tendered as opposed to retained or sold on the open market throughout the applicable period.[1] *See Amirsaleh*, 27 A.3d at 529–30 (noting that party's intent to waive known right is element of waiver); *CitiSteel USA*, 758 A.2d at 931 (noting that parties' intent that payment constitute total satisfaction of debt or claim is element of accord and satisfaction).

Similarly, the affirmative defenses of acquiescence and ratification, raised here, would likely require inquiry into individual stockholders' actions or words—including but not limited to the tendering of some number of shares and a determination of the number of shares tendered versus those untendered—that might evidence ratification of or acquiescence in the merger. *See Klaassen*, 106 A.3d at 1047 (noting that element of acquiescence defense is that claimant freely does something that amounts to recognition of complained-of act); *O'Malley*, 2002 WL 453928, at *5 n.28 (noting that element of ratification defense is that plaintiff consented to complained-of act). Because the proposed class members likely comprise a variety of shareholders exhibiting multiple combinations of shares that were sold, retained, and tendered—in a variety of quantities and timelines—it is probable that the different proposed class members' intentions and actions with respect to their shares would differ widely from one class member to another and, thus, require individual inquiries.[2]

---

[1] The class definition proposed by Plaintiffs comprises stockholders who held at least one share continuously throughout the period from the time of the merger announcement until the effective time of the merger and who tendered (a) at least one of their shares (while retaining at least one), (b) all but one of their shares, and (c) any proportion of their shares between those extremes; the proposed sub-class comprises stockholders who held at least one share continuously but did not tender any of their shares.

[2] For instance, even just the six named plaintiffs appear to each have a unique shareholding narrative, as best we can glean from their affidavits: one of the plaintiffs may have sold some or tendered some of its shares, one of the plaintiffs neither sold nor tendered any of his shares, three of the plaintiffs tendered none of their shares but may have sold some of their shares, and one of the plaintiffs tendered none of his shares but sold some shares.

15

Moreover, trial of appellees' affirmative defenses will likely require individual inquiries into other actions taken by shareholders—apart from selling, retaining, or tendering shares—that might demonstrate acquiescence, ratification, waiver, accord and satisfaction, or the application of equitable estoppel.

If the factfinder finds that the SEC filings did not disclose all material facts, such finding does not necessarily obviate Defendants' ability to assert their affirmative defenses because any individual plaintiff may have obtained material facts or knowledge about the transaction through other sources, requiring individual inquiries into potential class members' knowledge and intentions. On this record, and given the deferential standard by which we must review orders denying certification, we cannot say that the trial court acted unreasonably in concluding that the proposed subclass did not meet the predominance requirement and in refusing to certify the class on that ground. *See Ridgeway*, 205 S.W.3d at 581 (noting that appellant seeking to reverse order denying certification must demonstrate that Rule 42's requirements are met and that trial court's refusal to certify was "legally unreasonable" under facts and circumstances); *Domizio v. Progressive Cty. Mut. Ins. Co.*, 54 S.W.3d at 867, 876 (Tex. App.—Austin 2001, pet. denied) ("The grant or denial of class certification will be upheld on appeal so long as the trial court acted rationally in the exercise of its discretion.").

### *Superiority*

In addition to Plaintiffs' failure to satisfy the predominance prerequisite, we additionally conclude that the trial court did not abuse its discretion in finding that it "cannot determine whether class action is superior to individual actions to achieve a fair and efficient

adjudication of the controversy." *See* Tex. R. Civ. P. 42(b)(3); *Union Pac. Res. Grp., Inc. v. Hankins*, 51 S.W.3d 741, 754 (Tex. App.—El Paso 2001), *rev'd on other grounds*, 111 S.W.3d 69 (Tex. 2003) (noting that superiority analysis focuses on whether "the benefits of class-wide resolution of common issues outweigh any difficulties that may arise in the management of the class"). Appellants contend on appeal that the trial court "ignored pertinent superiority factors" in making its determination, instead focusing solely on the factor of whether "class members have an interest in resolving common issues by class action." *See Hankins*, 51 S.W.3d at 754–55 (listing factors that trial court "may" consider). The factors that appellants contend the trial court "ignored" are (a) whether class members will benefit from the discovery that has already been completed, thereby eliminating duplication of effort; (b) whether the trial court has already spent substantial time and effort becoming familiar with the issues of the case, *see id.*; (c) the desirability of concentrating the litigation in a particular forum; and (d) the difficulties to be encountered in the management of the action, *see* Tex. R. Civ. P. 42(b)(3)(C), (D). However, Plaintiffs referenced only one factor in their sole superiority argument before the trial court:

> Given the relatively small amount of dollars which may be at issue for many class members, the class action mechanism is the only means by which a claim challenging defendants' actions will ever be adjudicated. In this case, pursuing individual actions would be prohibitively expensive for the vast majority of class and subclass members in the instant action.

Plaintiffs did not provide any specifics or cite to any evidence supporting this argument.[3]

---

[3] Appellants refer to a one-page chart in the record purporting to show the number of Brigham shares held by approximately 30 investment managers "continuously" from September 30, 2011, to December 31, 2011. However, the date range for the purported "continuous" holding of

17

On appeal, appellants cite to the record as indicating the "immense" amount of discovery that has already occurred, the desirability of a Texas forum, and the familiarity of the trial court with the facts and claims at issue. While some of these assertions may be true, the trial court was within its discretion to weigh the sole factor on which Plaintiffs focused their effort below—whether class members have an interest in resolving common issues by class action—against class certification. There was a lack of evidence demonstrating the estimated number of potential class members and the estimated value of potential class members' damages. As the trial court observed, Plaintiffs' argument was premised on assumptions that Plaintiffs have not demonstrated to be true or even likely.

For instance, evidence in the record shows that there was an extraordinarily high trading volume during the tender period, which makes it unclear how many shareholders, if any, will fall into the category of "holding continuously" throughout the tender period. The evidence also fails to show how many of those continuously holding shareholders, if any, will be those who held only a small number of shares and would, therefore, face prohibitively expensive individual lawsuits. From the evidence in the record, it is equally possible that there are only a small number of shareholders who meet the class definition and that those few potential class members owned a large number of shares.[4] Additionally, while Plaintiffs assert that no shareholders other than Plaintiffs

_____

shares reflected in the chart is different from the date range provided in the class definition, and there is no guarantee from the document that the shares were held on behalf of the same investor or were not sold and then purchased later within the reflected period.

[4] Evidence shows that there were approximately 117 million outstanding shares of Brigham stock prior to announcement of the merger and that the total shares tendered numbered approximately 109 million, leaving approximately 8 million shares untendered. There is no evidence showing how many potential class members owned those 8 million shares or how many of the shares sold on the

have filed suit, demonstrating that a number of potential class members are small shareholders for whom litigation is too expensive, that fact is equally consistent with the possibility that most shareholders are happy with the merger price. On this record, we cannot conclude that the trial court acted unreasonably in concluding that "it cannot determine whether class action is superior to individual actions to achieve a fair and efficient adjudication of the controversy," which is a ground independent of the predominance prerequisite on which we must affirm the trial court's Order.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in denying appellants' motion for class certification. Accordingly, we affirm the trial court's Order denying Plaintiffs' renewed motion for class certification.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Bourland

Affirmed on Motion for Rehearing

Filed: December 28, 2018

_____

open market during the tender period, which would preclude a shareholder from meeting the "holding stock continuously" class definition as to the sold shares.