# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JOSEPH LIVINGSTON, M.D., | ) |
| | ) |
| Plaintiff, | ) C.A. No. K23C-12-023 RLG |
| | ) |
| KENT DIAGNOSTIC RADIOLOGY ASSOCIATES, P.A., | ) |
| | ) |
| | ) |
| Defendant. | ) |

Submitted:  June 28, 2024[1]
Decided:  October 23, 2024

## MEMORANDUM OPINION AND ORDER

*On Plaintiff's Motion for Partial Judgment on the Pleadings*
**DENIED**

*On Plaintiff's Motion to Dismiss Counterclaim*
**DENIED in PART, GRANTED in PART**

Adam F. Wasserman, Esquire, Ciconte Wasserman & Scerba, LLC, Wilmington, Delaware. *Attorney for Plaintiff.*

Josiah R. Wolcott, Esquire, Connolly Gallagher LLP, Newark, Delaware. *Attorney for Defendant.*

**GREEN-STREETT, J.**

---

[1] The transcript from the hearing in this matter was not received until August 12, 2024.

## I.    Introduction

Before the Court are Plaintiff Dr. Joseph Livingston's Motion for Partial Judgment on the Pleadings and Motion to Dismiss Counterclaim.  Dr. Livingston formerly belonged to Defendant Kent Diagnostic Radiology Associates, P.A. ("KDRA") as a shareholder.[2]  On June 30, 2023, Dr. Livingston terminated his partnership with KDRA. The parties have since engaged in the instant litigation surrounding how much money KDRA still owes Dr. Livingston.  As the contract between the parties contains ambiguity, Dr. Livingston's Motion for Partial Judgment on the Pleadings is **DENIED**.  KDRA has pled its breach of contract claim with enough specificity to state at least one claim sufficiently.  Accordingly, Dr. Livingston's Motion to Dismiss Counterclaim is **GRANTED in part** and **DENIED in part**.

## II.    Background

### A. Factual Background

Dr. Livingston belonged to KDRA as a shareholder from July 1, 2020 until June 30, 2023.[3]  Dr. Livingston's departure coincided with four other shareholders leaving KDRA.[4]   Under the Shareholder Agreement, upon terminating their

---

[2] Compl. at 2, D.I. 1 (Dec. 26, 2023).

[3] Pl.'s Mot. for Partial J. at 1, D.I. 17 (Mar. 20, 2024).

[4] Id. at 2.

association with KDRA, shareholders were entitled to: (1) a disbursement of their share of any excess funds in KDRA's operating account; and (2) compensation for any accrued, unused medical leave valued at $11,000.00 per week.[5] Dr. Livingston accrued five weeks of unused medical leave at the time of his departure from KDRA.[6]

The departure of five of the fourteen shareholders from KDRA caused the remaining nine shareholders to begin winding up the partnership.[7] KDRA's accountant notified all fourteen shareholders that "KDRA never held aside" the money to pay out unused medical leave to any departing shareholders.[8] Stated another way, KDRA never accounted for the liability it accrued when shareholders accumulated medical leave.[9] After accounting for the liability KDRA owed to each shareholder and subtracting that amount from KDRA's cash account, the accountant determined KDRA possessed a negative account balance.[10] The shareholders were informed the deficit would be borne by all fourteen shareholders – including the five

---

[5] Id. at 2.

[6] Def.'s Resp. at 5, D.I. 24 (May 3, 2024); see also Compl. at 7, D.I. 1.

[7] Compl. at 4-5, D.I. 1.

[8] Id. at 9.

[9] Id.

[10] Id.

departing shareholders paying their share of the deficit as a deduction from their medical leave disbursement.[11]

## B. Procedural Background

Dr. Livingston filed the Complaint asserting a single claim of breach of contract.[12] He argues: (1) KDRA deprived him of $8,909.60 derived from a grant; (2) KDRA improperly excluded him from two shareholder meetings; and (3) KDRA owes him $27,618.55 for unused medical leave.[13] Dr. Livingston seeks the money he believes KDRA owes him, as well as pre-judgment interest and attorney fees.[14]

KDRA disagrees with Dr. Livingston's interpretation of the Shareholder Agreement; denies excluding him from any shareholder meetings; and asserts a counterclaim against Dr. Livingston for breach of contract.[15] KDRA contends Dr. Livingston's failure to acknowledge his share of the medical leave liability constitutes a "refusal to abide by the plain language of the 2020 Shareholders Agreement."[16] Dr. Livingston responded by filing a Motion for Partial Judgment on

---

[11] Id.

[12] Compl. at 12, D.I. 1.

[13] Id. at 13.

[14] Id.

[15] Def.'s Resp. at 14-15, D.I. 24.

[16] Id. at 15.

the Pleadings, a Motion to Dismiss KDRA's counterclaim, and a Motion for Sanctions.[17]

The Court held oral argument regarding these motions on June 28, 2024.[18] At the hearing, Dr. Livingston withdrew his Motion for Sanctions.[19] KDRA asserted two factual bases for its breach of contract claim: (1) Dr. Livingston's anticipatory repudiation; and (2) Dr. Livingston's responsibility for KDRA's breach of its contract with Bayhealth.[20]

## III. Standard of Review

The standard this Court applies to both a motion for judgment on the pleadings and a motion to dismiss is virtually identical.[21] This Court may grant such motions "where there is no material fact in dispute and the movant is entitled to judgment as

---

[17] Pl.'s Mot. for Partial J. at 1, D.I. 17.

[18] D.I. 25.

[19] Tr. at 1.

[20] Id. at 24.

[21] Super. Ct. Civ. R. 12(c); Super. Ct. Civ. R. 12(b)(6).

5

a matter of law."[22] The Court must view all "facts pleaded and inferences to be drawn from such facts in a light most favorable to the non-moving party."[23]

"A [Superior Court Civil] Rule 12(c) motion is a proper framework for enforcing unambiguous contracts, which have only one reasonable meaning and therefore do not create material disputes of fact."[24] Ambiguity exists within a contract "when the provisions in controversy are reasonably or fairly susceptible of different interpretations[,] or may have two or more different meanings."[25] If the Court can determine the meaning of a contract from "knowledge of the simple facts on which, from the nature of language in general, its meaning depends," the Court must find the contract unambiguous.[26]

[22] Plume Design, Inc. v. DZS, Inc., 2023 WL 5224668, at *4 (Del. Super. Aug. 10, 2023) (internal quotations omitted) (quoting Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P., 1992 WL 181718 at *1 (Del. Ch. Jul. 28, 1992), rev'd 624 A.2d 1199 (Del. 1993)); Malpiede v. Townson, 780 A.2d 1075, 1082 (Del. 2001).

[23] Plume Design, 2023 WL 5224668, at *4 (citing Warner Communications, Inc. v. Chris-Craft Indus., Inc., 583 A.2d 962, 965 (Del. Ch. 1989)); Malpiede, 780 A.2d at 1082.

[24] Id. (internal quotations omitted) (quoting Bay Point Cap. Partners L.P. v. Fitness Recovery Holdings, LLC, 2021 WL 5578705, at *4 (Del. Super. Nov. 30, 2021)).

[25] Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992).

[26] Id.

## IV. Discussion

### A. Dr. Livingston's Motion for Partial Summary Judgment must be denied

Dr. Livingston posits "[t]he 2023 Shareholder Resolution and July 31, 2023 Letter unequivocally require KDRA to prioritize the payment of unused medical leave to the five terminating shareholders, including [Dr. Livingston]."[27] He contends KDRA's reduction of his payout, which KDRA calculates by attributing to Dr. Livingston his share of all fourteen shareholders' accrued medical leave, violates his agreements with KDRA.[28] Dr. Livingston maintains the only possible interpretation of the various agreements between himself and KDRA preclude KDRA from applying a negative "equalization payment" to calculate how much money it owes Dr. Livingston.[29]

There is no dispute that the documents referenced by Dr. Livingston unambiguously establish KDRA owes him $55,000.00 for his five weeks of unused emergency medical leave.[30] KDRA also represented to its shareholders that the five departing shareholders, Dr. Livingston among them, would be paid the balance of

---

[27] Pl.'s Mot. for Partial J. at 9, D.I. 17.

[28] Id. at 9-10.

[29] Id. at 10.

[30] Pl.'s Ex. C at 2, D.I. 7.

their unused medical leave before the nine remaining doctors.[31]  Nothing in those documents, however, excuses Dr. Livingston from his obligation under the original Shareholder Agreement to share in the liabilities incurred by KDRA.[32]  To the extent Dr. Livingston argues he possessed no obligation to share in the liability KDRA accrued, the Court disagrees.

While there is no dispute that Dr. Livingston is entitled to payment for his unpaid medical leave, a great deal of ambiguity remains regarding Dr. Livingston's obligations to KDRA.  Dr. Livingston cannot, as a matter of law, ask this Court to enter partial judgment on the pleadings on this issue without clarity on the liabilities he owes.  No agreement exists on either the categorical or calculated liability exposures for Dr. Livingston.  This ambiguity prevents the entry of judgment as Dr. Livingston requests.  Accordingly, Plaintiff's Motion for Partial Judgment on the Pleadings is **DENIED**.

**B.    Dr. Livingston's Motion to Dismiss Counterclaim based on anticipatory repudiation must be denied**

KDRA asserts a counterclaim against Dr. Livingston for breach of contract, alleging his refusal to acknowledge his share of KDRA's liability qualifies as an

---

[31] Id. at 3.

[32] See Pl.'s Ex. A ¶2.2, D.I. 5.

anticipatory repudiation of his shareholder agreement with KDRA.[33] KDRA further alleges Dr. Livingston failed to "perform such other functions as may be required by KDRA's contract with Bayhealth" because he "failed to perform in a manner that was required by KDRA's contract with Bayhealth."[34] Dr. Livingston moves for the dismissal of those claims under Superior Court Civil Rule 12(b)(6).

Anticipatory repudiation occurs when there exists "an outright refusal by a party to perform a contract or its conditions."[35] Anticipatory repudiation constitutes a breach of contract.[36] Dr. Livingston "acknowledges that his share of the Net Account Receipts may be offset by KDRA's liabilities," but contests KDRA's calculations.[37] Dr. Livingston takes issue with KDRA's assignment of his share of the other shareholders' unused medical leave expense. Accepting KDRA's allegations as true, KDRA has pled sufficient facts to put Dr. Livingston on notice of the nature of KDRA's claim. If Dr. Livingston must pay KDRA in the manner KDRA asserts, Dr. Livingston's failure to do so and initiation of litigation to avoid

---

[33] Def.'s Resp. at 15, D.I. 24; KDRA dropped its counterclaim related to Dr. Livingston's alleged failure to meet and confer before litigation.

[34] Id. at 16.

[35] CitiSteel USA, Inc. v. Connell Ltd. P'ship, 758 A.2d 928, 931 (Del. 2000).

[36] Cochran v. Denton, 1991 WL 220547, at *1 (Del. Ch. Oct. 28, 1991), aff'd, 612 A.2d 157 (Del. 1992).

[37] Pl.'s Mot. for Partial J. at 13, D.I. 17.

that payment could conceivably constitute a breach of contract. Accordingly, Dr. Livingston's Motion to Dismiss Counterclaim is **DENIED** as to this claim.

### C. Dr. Livingston's Motion to Dismiss Counterclaim as to KDRA's contract with Bayhealth is granted

KDRA does not style their counterclaim as having two parts, but they allege Dr. Livingston also breached his contract by not honoring KDRA's contract with Bayhealth.[38] KDRA fails, however, to provide any factual allegations in support of this claim. To the extent the KDRA intends this allegation to serve as a separate claim, Dr. Livingston's Motion to Dismiss Counterclaim is **GRANTED** as to this claim.

## V. <u>Conclusion</u>

The contracts disputed by the parties appear to contain ambiguity. As the agreements are ambiguous, the Court cannot enter judgment on the pleadings. KDRA has pled allegations with enough specificity to survive a motion to dismiss for failure to state a claim regarding Dr. Livingston's potential anticipatory repudiation. As to KDRA's allegations against Dr. Livingston regarding his failure to honor KDRA's contract with Bayhealth, KDRA fails to specify what part of that contract Dr. Livingston breached.

---

[38] Def.'s Resp. at 16, D.I. 24.

Accordingly, Dr. Livingston's Motion for Partial Judgment on the Pleadings is **DENIED**, and Dr. Livingston's Motion to Dismiss Counterclaim is **DENIED** as to his alleged anticipatory repudiation and **GRANTED** as to any allegations stemming from KDRA's contract with Bayhealth.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge