**IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE**

| | | |
|---|---|---|
| VRNS II, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **C.A. No. N25A-07-003 CEB** |
| | ) | |
| JOSEPH DESMARIAS, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |

Submitted: January 5, 2026
Decided: January 28, 2026

## MEMORANDUM OPINION

*Upon Appellant's Appeal from the Court of Common Pleas:* **AFFIRMED.**

John R. Weaver Jr., Esq., Wilmington, Delaware. *Attorney for Appellant.*

Robert C. McDonald, Esq., SILVERMAN, MCDONALD & FRIEDMAN, Wilmington, Delaware. *Attorney for Appellee.*

**Butler, R.J.**

# FACTUAL BACKGROUND

This is an appeal from a judgment of the Court of Common Pleas regarding a contract dispute. Defendant-Appellee, Joseph Desmarias ("Desmarias"), was hired by Plaintiff-Appellant VRNS II, LLC ("VRNS") to demolish a home and remove debris from a property owned by VRNS ("the Property").[1] The agreement was negotiated by Desmarias and Praveen Patel ("Mr. Patel"), the property manager for VRNS.[2] The only written evidence of the agreement's existence was an estimate for $23,000 ("the Estimate") to "REMOVE ALL UTILYS FENCE REMOVE HOUSE AND HAUL AWAY FILL WITH STONE GRAVLE DIRT AND TOP."[3] The Estimate required that VRNS pay a 50% deposit before the project was started but notably contained no date for performance.[4]

After receiving the initial deposit, Desmarias obtained a demolition permit for a three-month period from February 16, 2022, to May 16, 2022.[5] He rented an excavator and a Bobcat, and had 40 tons of dirt delivered to the site.[6] The house

---

[1] The facts are taken from the Court of Common Pleas June 9, 2025, Decision After Trial, C.A. No. CPU4-22-002095 ["Dec. at #"].
[2] The parties had worked together in the past and it was usual practice for Desmarias to survey a property and then provide an estimate, but Mr. Patel denied Desmarias access to the home located on the Property. It was also their usual practice that the Estimate would serve as a starting point and additional costs would be assessed throughout the demolition project. Trial Tr. 88:7-90:15.
[3] Appellant's Opening Br., Ex. B.
[4] *Id.*
[5] Dec. at 4.
[6] Trial Tr. 99:3.

was demolished in just one day, but complications arose when it came to sorting and disposing of the debris.[7] Sorting is a necessary step in a demolition project as some materials are expensive to dump while other materials can be recycled at a more favorable rate.[8] Upon demolishing the house, Desmarias discovered the home was filled floor to ceiling with "every piece of furniture you could ever imagine" as it was previously occupied by "hoarders."[9] The dumpsters were rented at $550 for each load emptied and there was an additional fee for each ton brought to the landfill.[10]

When some 20 tons of debris had been removed without making a dent, Desmarias contacted Mr. Patel about the rising cost of debris removal and the need for additional money beyond the Estimate.[11] The two agreed that Desmarias would purchase a dump truck to avoid the $550 per dumpster fee and keep costs low.[12] At this time, Mr. Patel procured a check for $8,000 and told Desmarias that the remaining $1,000 on the Estimate would be paid to him following completion of the project.[13] Desmarias then purchased a dump truck but it required immediate repairs, thus stalling the project. Desmarias testified that he communicated nearly every day

---

[7] Dec. at 5.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 5-6.
[12] *Id.* at 6.
[13] *Id.*

with Mr. Patel regarding the delay and that at no time was he told the delay was problematic or that VRNS expected performance at an earlier date.[14]

When Desmarias returned to the Property with an operable dump truck sometime in the beginning of May, but before the expiration of the demolition permit, he discovered that VRNS had hired a different contractor to complete the job.[15] At trial, the president of VRNS, Mr. Vinod Patel ("Mr. Vinod"), claimed that Mr. Patel had repeatedly tried to contact Desmarias about returning to the Property because there were complaints from the neighborhood about the unsightly scene and VRNS had received an environmental violation from New Castle County.[16] Desmarias' testimony was that Mr. Patel knew he was fixing the dump truck with the intention of returning to the Property to complete the job and that their last correspondence was two days prior to Desmarias discovering he had been replaced.[17] At the time of his replacement, Desmarias had been paid $22,000 of the original $23,000 estimate.

VRNS hired three contractors to replace Desmarias and they completed the job in around two weeks.[18] VRNS filed this breach of contract action in the Court

---

[14] *Id.*
[15] *Id.* at 7.
[16] Tr. 49:11 – 50:10.
[17] Dec. at 6-7.
[18] *Id.* at 8.

of Common Pleas seeking $43,916.30 for the cost of hiring the replacement contractors.[19]

## DECISION OF THE COURT OF COMMON PLEAS

The Court of Common Pleas found that a contract existed between Desmarias and VRNS and that both parties had breached the contract by failing to perform.[20] The determinative question then was which party breached first and excused the other party's nonperformance. VRNS argued that Desmarias breached first by failing to complete the job in a timely manner.[21] Desmarias argued that there was no breach on his part because the parties had never specified a time for performance and he could have performed within a reasonable time, namely before the expiration of the permit on May 16th.[22] Mr. Patel did not testify at trial so Desmarias' testimony was the only evidence before the Court as to their communications. VRNS' position was undermined by the absence of any testimony from Mr. Patel, who was the person employed by VRNS that arranged the contract with Desmarias.

The Court of Common Pleas held that the unchallenged testimony of Desmarias demonstrated that VRNS was aware that Desmarias intended to perform within a reasonable time and that the delay was caused by both parties' interest in

---

[19] *Id.*
[20] *Id.*
[21] *Id.* at 9.
[22] *Id.*

5

lowering costs through the use of a dump truck.[23] VRNS deviated from its normal course of business and expected the job to be completed in a timeframe not contemplated by the agreement, therefore Desmarias did not commit a breach.[24] The fact that replacement contractors hired by VRNS completed the job within two weeks suggested that Desmarias reasonably could have performed before the expiration of the permit.[25] The Court's ultimate conclusion was that VRNS had wrongfully repudiated the agreement and was not entitled to recover damages.[26]

## STANDARD OF REVIEW

"When sitting as an intermediate court of appeals, and unless otherwise mandated by statute, the Superior Court's function is basically the same as the Delaware Supreme Court."[27] This Court must determine "whether the factual findings made by the trial judge are adequately supported by the record and are the product of an orderly and logical deductive process."[28] In doing so, this Court "will

---

[23] *Id.* at 10.
[24] *Id.* at 11.
[25] *Id.* at 10.
[26] *Id.* at 13.
[27] *Baker v. Connell,* 488 A.2d 1303, 1309 (Del. 1985).
[28] *Massey v. Nationwide Assurance Co.,* 2018 WL 4692488, at *2 (Del. Super. Sept. 28, 2018) (quoting *Wyatt v. Motorola, Inc.*, 1994 WL 714006, at *2 (Del. Super. Mar. 11, 1994)).

not make its own factual findings, weigh evidence, or make credibility determinations."[29] For errors of law, the standard of review is *de novo*.[30]

## ANALYSIS

VRNS's sole contention on appeal is that Desmarias breached first when he "took over two months to be in a position to complete the work on a permit issued by the County with date certain that it terminates."[31] VRNS argues that the expiration of the demolition permit substitutes as the time for performance and since there was no way Desmarias could have completed the job in time, VRNS was justified in hiring contractors who could do the job before the permit expired.

Under Delaware law, if a contract does not specify a time for performance, the party has a reasonable amount of time to perform.[32] "The party asserting a right based on a reasonable time period must provide evidence of what is a reasonable time to perform under the contract."[33] What constitutes a reasonable time to perform is generally a question of fact.[34]

---

[29] *Meyers v. Chatham Cove Association of Unit Owners*, 2025 WL 1744378, at *2 (Del. Super. June 24, 2025).

[30] *Robert J. Smith Companies, Inc. v. Thomas*, 2001 WL 1729143, at *2 (Del. Super. Dec. 10, 2001).

[31] Appellant's Opening Br. at 6.

[32] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2020 WL 7028597, at *8 (Del. Super. Nov. 30, 2020).

[33] *Id.* (quoting *Gluckman v. Holzman,* 51 A.2d 458, 467 (Del. Ch. 1947)).

[34] *Id.* (quoting *HIFN, Inc. v. Intel Corp.*, 2007 WL 1309376, at *11 (Del. Ch. May 2, 2007)).

7

The Court of Common Pleas conducted significant fact finding on this issue at trial. The parties never expressly agreed on a timeframe and while the three-months allowed by the permit could have supplied the reasonable time for performance, Desmarias testified that VRNS knew the job would take longer because of the sizeable amount of debris in the home. The Court of Common Pleas found Desmarias' testimony to be credible and due to Mr. Patel's absence from the trial, the Court found no reason to doubt his statements that VRNS agreed that the dump truck was a good idea and permitted him time to conduct repairs. After weighing the evidence, the Court of Common Pleas followed "an orderly logical process" in concluding that Desmarias' delay while repairing the truck was not unreasonable in light of the parties' oral agreement.

Furthermore, even if the reasonable time to perform was prior to the expiration of the permit, there was no evidence supporting VRNS' conclusion that Desmarias would not have been able to complete the work in the two weeks between his return to the Property and the end of the permit. He testified at trial that he believed he could have finished the job in that time and the replacement contractors did in fact complete the job in around two weeks. The Court of Common Pleas' finding was adequately supported by the record.

"Under Delaware law, repudiation is an outright refusal by a party to perform a contract or its conditions entitling 'the other contracting party to treat the contract

8

as rescinded.'"[35]  "[A] party may repudiate through a voluntary and affirmative act rendering performance apparently or actually impossible" and "[a] party's good faith belief that the other is already in breach of the agreement does not privilege a party to repudiate its obligations."[36]

The record supports the finding of the Court of Common Pleas that VRNS repudiated the contract by replacing Desmarias before allowing him a reasonable time to perform.  Absent testimony from Mr. Patel, there was no reason for the Court to doubt Desmarias' statements that he had been ousted from the Property without any warning from VRNS.

## CONCLUSION

For all of the foregoing reasons, the rulings of the Court of Common Pleas are **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

---

[35] *Concrete v. CDE Glob., ID*, 2025 WL 3083282, at *10 (Del. Super. Nov. 3, 2025) (citing *CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000)).
[36] *Id.* (first quoting *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862, at *16 (Del. Ch. Mar. 1, 2022); and then quoting *HIFN, Inc.,* 2007 WL 1309376, at *14).

9