John E. GIBSON, individually and trading as John E. Gibson-Victor G. Trapasso Limited Partnership, Victor G. Trapasso, individually and trading as John E. Gibson-Victor G. Trapasso Limited Partnership, Gerald Wilgus, individually and trading as John E. Gibson-Victor G. Trapasso Limited Partnership, Defendants-Appellants,

v.

Richard KEITH, Sr., Margaret Keith and Richard Keith, Jr., Plaintiffs-Appellees,

and

Melvin L. Joseph Construction Co., a Delaware corporation, Defendant-Appellee.

Supreme Court of Delaware.
Submitted: Nov. 20, 1984.
Decided: April 26, 1985.

---

242

F. Alton Tybout (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendants-appellants.

Bruce M. Stargatt (argued), Arthur Inden, Richard A. Zappa, and James L. Patton, Jr. of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiffs-appellees.

Before HORSEY, MOORE and CHRISTIE, JJ., and HARTNETT and WALSH, Vice Chancellors.

HORSEY, Justice:

This interlocutory appeal of a personal injury suit pending before trial in Superior Court was accepted to determine a limited issue of statutory construction: What property owners are entitled to invoke the provisions of 7 Del.C., chapter 59 in defense of tort claims asserted by strangers injured on private property in the course of recreational pursuits?

The suit arises from a swimming accident in the summer of 1980 at a water hole in a gravel pit in an isolated area of Sussex County. Plaintiff, Richard Keith, Jr., then a 17-year old minor, suffered paralytic injuries when he dove into shallow water from a rope swing affixed to a nearby tree. Defendants-appellants, John E. Gibson, Victor G. Trapasso, and Gerald Wilgus, doing business as a limited partnership, are the owners of the commercial borrow pit, the general control of which was contracted out to defendant Melvin L. Joseph Construction Co., a Delaware corporation ["Joseph"]. Joseph is not a party to the appeal.[1]

After extensive discovery, the defendant-owners moved the Superior Court for summary judgment on three grounds: one, that the claim was barred by 7 Del.C., ch. 59, titled, "Public Recreation on Private Lands"; two, that plaintiff Keith was a trespasser to whom defendants breached no duty as a matter of law; and three, that Keith was contributorily negligent as a matter of law. The Court found that factual issues precluded summary judgment on any of the three grounds. However, the Court interpreted 7 Del.C., ch. 59 as applicable to only those landowners "who **directly or indirectly invite or permit** without charge any person to use the property for recreational purposes." (emphasis added). 7 Del.C. § 5904. The Court then ruled that since defendants had denied giving Keith permission to enter and swim in the borrow pit, the statute was not available to defendants, as a matter of law. Defendants sought to appeal this ruling; but in view of the unresolved factual issues found by the Trial Court, we limited our acceptance of the interlocutory appeal "solely to the questions involving the Superior Court's interpretation of 7 Del.C., ch. 59."

Limiting ourselves to the narrow question certified for appeal, we affirm Superior Court's construction of 7 Del.C., ch. 59:

---

1. A default judgment was obtained against Joseph for failure to timely appear; a motion to vacate the judgment was denied; and this Court refused Joseph's interlocutory appeal.

that the statute may only be invoked to limit the liability of real property owners "who directly or indirectly invite or permit without charge" the public at large to use their property for recreational purposes. We thereby reject defendants' contentions to the contrary: (1) that 7 *Del.C.*, ch. 59 does not require an "invitation" or "permission" in order to apply; (2) that the statute's protection extends to any lands that are "available" for putting to recreational use without regard to the intent of the owner that they be so used; and (3) that the statute's protection extends to claims of trespassers, *i.e.*, the uninvited as well as the invited.

In our view, an invitation or permission (direct or indirect) extended by a landowner to the public to enter without charge for recreational purposes is a *sine qua non* for invoking the statute's protective benefits. But, to secure the statute's benefits, an owner is not required to make an explicit "offer" of land or water areas for recreational use. We base this result upon what we find to be the statute's underlying purpose: to encourage landowners to permit their private lands to be made available for public use for recreational purposes. In return, the statute grants such owners broad immunity against suit by a gratuitous public invitee injured while pursuing recreational activities. Thus, we hold that a landowner who undertakes affirmatively either to warn or bar the public from entry cannot assert the statute as a bar to a tort claim brought by a person who has entered the premises either with knowledge or in disregard of the owner's efforts to keep the public out.

In essence, a land or water area's particular conduciveness to recreational use *and* the owner's positive efforts to make such areas available without charge to the public for recreational use determine a landowner's right to invoke the statute. However, we limit application of the statute to the recreational use of essentially undeveloped land and water areas (primarily rural or semi-rural land, water or marsh) and we find it not applicable to urban or residential areas improved with swimming pools, tennis courts and the like.

We reach this result notwithstanding the purported anomaly of, in effect, depriving a property owner of the benefits of the statute by his having taken affirmative steps to warn and/or to bar the public from entering his property for recreational pursuits. Such an owner may, of course, assert any common law defense to liability. The logic of the contrary result is outweighed by the legislative mandate that the statute's protective benefits be confined to those landowners whose lands are opened for recreational use by the public. That is the Legislature's choice, and we are bound by it.

## I

The statute raised by defendants as a bar to this suit, 7 *Del.C.*, chapter 59, was enacted in 1966 as 55 *Del.Laws*, chapter 449. The construction of this statute is a question of first impression which, in view of the statute's age, may seem surprising. Indeed, defendants did not raise the statute, known as the Recreational Use Act, as a bar to plaintiffs' claim until the briefing of their motion for summary judgment, some 18½ months after the Complaint was filed.[2] We set out all pertinent provisions of the statute below.[3]

**§ 5901. Purpose.**

The purpose of this chapter is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

**§ 5902. Definitions.**

As used in this chapter:

---

2. By reason of the late assertion of the statute, plaintiffs argued below that defendants waived the assertion of the defense—assuming the statute were applicable. However, Superior Court, by finding the statute to be inapplicable, did not reach the issue of waiver. Thus, that issue remains open.

3. 7 *Del.C.*, ch. 59, titled "Public Recreation on Private Lands", provides in pertinent part:

The parties are in fundamental disagreement over whether the statute should be given a broad or a narrow application. And the crux of their differences lies in whether a property owner must extend an invitation or grant permission to the public to enter for recreational purposes in order to invoke the statute's limitations against liability.

Apart from a preliminary observation that the statute "is intended for application to large open spaces and not to urban or residential circumstances", defendants urge the Court to construe the statute as, *first,* having general application to all landowners "of large open spaces" and, *second,* as affording protection against all persons entering upon such areas for recreational purposes without regard for the status of such persons, i.e., whether they are trespassers, licensees or invitees (subject only to limitations on exemption from liability found in § 5906).

Defendants thereby place predominant reliance upon the language of § 5903 as defining the scope of the limited immunity conferred by the statute. Because § 5903 does not qualify the owners to whom it applies, i.e., confine its application to owners who invite or permit entry by the public for recreational use, defendants reason that all owners (of such lands) may invoke the statute in defense of an injury suit such as this. Defendants also reason that because § 5903 does not qualify the "persons entering" upon the owners' lands as invitees or licensees, § 5903 "clearly covers all persons on the land for recreational purposes regardless of their status as trespassers, licensees or invitees...."

To rebut the contention that such a construction of § 5903 is inconsistent with the provisions of § 5904, defendants down-play the significance of § 5904. Under defendants' view of the Act, § 5904 serves only to "make clear" that the immunity conferred

(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(2) "Owner" means the possessor of a fee interest, tenant, lessee, occupant or person in control of the premises.

(3) "Recreational purpose" includes, but is not limited to, any of the following, or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic or scientific sites.

(4) "Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

§ 5903. Limitation on duty of owner.

Except as specifically recognized by or provided in § 5906 of this title, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for such purposes.

§ 5904. Use of land without charge; limits of liability.

Except as specifically recognized by or provided in § 5906 of this title, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose;

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;

(3) Assume responsibility, or incur liability, for any injury to person or property caused by an act of omission of such persons.

§ 5905. Written waivers. [omitted]

§ 5906. Limitations on exemption from liability.

Nothing in this chapter limits in any way any liability which otherwise exists:

(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity;

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

§ 5907. Exemptions.

Nothing in this chapter shall be construed to:

(1) Create a duty of care, or ground of liability, for injury to persons or property;

(2) Relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this chapter to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

by § 5903 applies not only to landowners faced with trespassers but "even" to landowners who have invited or permitted third parties to use their lands for recreational purposes. In defendants' words, "the purpose of § 5904 is to make clear that *even if* there is an invitation or permission, the limited immunity conveyed by § 5903 endures." Thus, defendants construe the statute as intended to limit the liability of all landowners (of areas within the Act's coverage) including those who have attempted to prevent entry by the public and not simply those landowners who have invited or permitted entry by the public for recreational use. Finally, defendants argue that this result is consistent with the underlying purpose of the statute as stated in § 5901: since defendants' water hole was "available" for plaintiff's use (and was made use of by Keith despite defendants' efforts), defendants should be permitted to invoke the liability benefits of Chapter 59.[4]

## II

■ While defendants' arguments are plausible, indeed imaginative, we are not persuaded that the Delaware statute relating to public recreation on private lands may be invoked by a property owner who takes affirmative steps to deny the public access to such lands for recreational use or any other purpose. We hold that the statute must be construed as intended only for the benefit of owners of private property who evidence intent to permit the public to enter for recreational use. Thus, the statute may not be invoked against one who enters as a trespasser and not as a statutory invitee of the owner. Our reasons are several.

■ *First,* we cannot agree that Chapter 59 was intended for general application to all landowners of land and water areas intended for coverage under the Act. We find this implicit in the statute's statement of purpose, § 5901. As stated therein, the purpose of the statute is to "encourage" owners of qualifying land and water areas (as defined under paragraph (1) of § 5902) to "make [them] available to the public for recreational purposes." The means for accomplishing this purpose—the opening of private lands for recreational use by the public at large—is a special statutory grant of qualified immunity from suit by such recreational users. That is the *quid pro quo* received by an owner for opening lands for recreational use by the public. Therefore, an owner who does not evidence an intent to permit the public to enter for recreational use may not invoke the statute's protective benefits against liability.

■ The inclusion within the title of the Act, 55 *Del.Laws,* ch. 449, of the Act's statement of purpose ["AN ACT TO ENCOURAGE LANDOWNERS TO MAKE LAND AND WATER AREAS AVAILABLE TO THE PUBLIC BY LIMITING LIABILITY IN CONNECTION THEREWITH"] reinforces the legislation's goal: that private land and water areas (albeit vaguely defined) be made "available" without charge to the public for recreational use. It necessarily follows that the benefits of the statute were not intended for private landowners who, contrary to the Act, attempt to deny the public access to their lands.[5] To say that lands of a forbidding owner are nevertheless "available"

4. Defendants also make several additional arguments. Given: (1) the extent to which lands in rural areas are trespassed upon for recreational pursuits; (2) the ever-expanding scope of tort liability of landowners to the uninvited as well as the invited, and (3) the difficulty, if not impossibility, of landowners to know what measures to take to protect themselves; the Legislature must have intended Chapter 59 to be available for use against trespassers as well as invitees. Nor does it make sense to limit the statute's benefits to these few owners who might

invite entry and to deny its benefits to those many owners who undertake efforts to warn or dissuade strangers from entering for recreational use.

5. Chapter 59 is to be contrasted with recreational use statutes in other jurisdictions which are either cast in broad terms of protecting all landowners from recreational suits or as extending to lands whether or not posted against trespassing. See part III below.

for use by a trespasser so as to qualify the owner for the statute's protective benefits would defeat its underlying purpose. In our view, for one's lands to be "available" for use requires an affirmative act of a landowner, as stated in § 5901, "to *make* land and water areas available." (underlining added.)

■ *Second,* defendants have misconstrued § 5903 in reading it as conferring an unlimited *right* of all owners to invoke the statute and against any entrant, trespasser as well as invitee. Such a construction of § 5903: (1) is inconsistent with the Act's underlying intent, as previously discussed; (2) mistakes its purpose; and (3) is inconsistent with both § 5901 and § 5904. In our view, § 5903 serves a more limited purpose: it limits the *duties* of a covered owner to those who enter for recreational use and clearly implies that it is referring to invitees. Section 5903 absolves such owners: (a) of any duty of care to keep the premises safe "for entry or use ... for recreational purposes"; and (b) of any duty to warn of a "dangerous condition, use, structure, or activity on such premises."

In contrast with § 5903, § 5904 limits the *liability* of a covered owner. It does so after defining such an owner as being one, "who either directly or indirectly invites or permits" any other person to use the owner's property for recreational purposes without charge. Section 5904 then limits a covered owner's liability: (a) by disclaiming an invitation to enter as being "any assurance" as to the safety of the premises; (b) by depriving such entering person of the "legal status of an invitee or licensee"; and (c) by declaring the invitation extended not to constitute an assumption of "responsibility" or "liability" for "act of [sic] omission" of the owner.

■ So construed, § 5903 does not conflict with § 5904 in the definition of a cov-

ered owner; and "owner", as there defined, is consistent with § 5901. The inherent conflict between those sections posed by defendants' literal construction of § 5903 must be rejected in favor of a construction that reconciles the two sections. *Nationwide Mutual Ins. Co. v. Krongold,* Del. Supr., 318 A.2d 606 (1974); *Halifax Chick Express v. Young,* Del.Supr., 137 A.2d 743 (1958). As the Superior Court noted, no reason exists to assume that the Legislature intended to "differentiate the landowners in § 5903 from those in § 5904." Moreover, strict, rather than liberal, construction of legislation in derogation of the common law is the rule. *See Carper v. Board of Education,* Del.Supr., 432 A.2d 1202 (1981); *State v. Brown,* Del.Supr., 195 A.2d 379 (1963). *Compare Stratford Apts., Inc. v. Fleming,* Del.Supr., 305 A.2d 624 (1973). Thus, Chapter 59's exoneration of owners must be confined to the statute's intended beneficiaries—the invited public—and not an uninvited trespasser.

■ We think it clear that the immunity granted by Chapter 59 is to be invoked only against those who, but for the statute, would otherwise constitute common law invitees or licensees of an inviting owner. The immunity conferred may not be invoked by an uninviting owner against a trespasser.

■ *Third,* while the Delaware Act lacks any legislative history, apart from the Act's title and statement of purpose in § 5901, it seems fairly clear that the Act is derived from a model act of "Suggested Legislation" proposed by The Council of State Governments in 1965. *The Council of State Governments, Suggested State Legislation,* Vol. XXIV, p. 150 (1965). The Delaware statute is identical to the model act. This being so, the preamble or introductory statement of the reasons for the model act is entitled to consideration.[6] The

---

6. We quote in part from that preamble:
    "Recent years have seen a growing awareness of the need for additional recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by

governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available.
    *       *       *       *       *       *

preamble's reference to an "accommodating owner" clearly suggests the antithesis of an owner who takes measures to post property against entry or otherwise impedes access to property by strangers.

## III

An extensive body of decisional law exists in other jurisdictions applying recreational use statutes in various forms. Forty-six other states have enacted recreational use statutes. While the statutes take a variety of forms, they may be said to fall into roughly four variations on the model act.[7] Those four variations may be characterized as follows: *one*, the model act with coverage enlarged; *two*, the model act with coverage narrowed; *three*, the model act with statement of purpose deleted and other changes; and *four*, the model act essentially unchanged.

Variation *one*, adopted by nine states—Arizona, California, Indiana, Louisiana, Michigan, Mississippi, Ohio, South Dakota and West Virginia—departs significantly from the model act by extending coverage to bar claims of trespassers as well as gratuitous invitees.[8] Variation *two*, adopted by six states—Montana, Rhode Island, Texas, Vermont, Washington and South Carolina—also departs from the model act by narrowing coverage to claims of persons actually having permission, explicit or implied, to enter for specific recre-

ational pursuits. Variation *three*, adopted by ten states—Maine, Missouri, Nevada, New Hampshire, New Jersey, New York, North Dakota, Virginia, Wisconsin and Wyoming—significantly omits the model act's statement of purpose that is also found in § 5901 of the Delaware statute. Variation *four*, adopted by sixteen states, including Delaware—Arkansas, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maryland, Minnesota, Nebraska, Oregon, Pennsylvania, South Carolina and Utah—represents the model act essentially unchanged.[9] The recreational use statutes of all of the states within variation *four* contain nearly identical statements of purpose as found in Delaware's § 5901 *and* include provisions similar to §§ 5903 and 5904.

Defendants have made a similar effort to classify the recreational use statute law in other jurisdictions. Finding the Delaware "pattern" statute to have been adopted by a score or so of other jurisdictions, defendants argue that it is unreasonable to suppose that legislatures in such numbers would have erred in enacting both §§ 5903 and 5904 if § 5903 were to be deemed "superfluous." But, as demonstrated above, our construction of chapter 59 does not render § 5903 redundant.

### A.

However, classifying the variations on the model act in other jurisdictions is help-

---

... [I]n those circumstances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.

In something less than one-third of the states, legislation has been enacted limiting the liability of private owners who make their premises available for one or more public recreational uses. This is done on the theory that it is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accommodating owner receives no compensation or other favor in return.

The suggested act which follows is designed to encourage availability of private lands...."
*The Council of State Governments, Suggested State Legislation,* Vol. XXIV, p. 150 (1965).

7. The Council of State Governments' monogram accompanying the model act indicates that the statutes of one-third of the states predate the model act.

8. In California, it appears that the broader application of the statute results from judicial legislation. *See Parish v. Lloyd,* Cal.Ct.App., 82 Cal.App.3d 785, 147 Cal.Rptr. 431 (1978).

9. Alabama, Colorado, Florida, Oklahoma and Oregon would also fall within variation *four* but for further variations, including the following: Alabama has amended its equivalent of Delaware's § 5903 to apply to an owner who "permits" entry. Colorado omits the equivalent of Delaware's § 5903 but retains the equivalent of Delaware's § 5904. Florida and Oklahoma make special reference to an owner who "provides the public with a park area."

ful in sifting through the body of foreign law in search of analogous legislative intent. Defendants assert that there is pertinent decisional law to be found in nine jurisdictions: California, Georgia, Illinois, Michigan, Nebraska, Nevada, New Jersey, Pennsylvania and Wyoming. Applying our screening technique based on the foregoing classification of recreational use statutes, we confine our consideration of that body of case law to category *four* jurisdictions: Georgia, Illinois, Nebraska, and Pennsylvania.[10]

In *Georgia Power Co. v. McGruder*, Ga. Supr., 229 Ga. 811, 194 S.E.2d 440 (1972), a ten-year old trespassing child drowned in a pool beneath defendant's dam and power generating plant. The Georgia recreational use statute, Ga.Code Ann. §§ 51–3–20 to 51–3–26 (1982), was held not to apply as a bar to suit where the use of the land was expressly denied by the posting of "keep out" signs in the area. The Georgia Supreme Court stated:

> The evidence presented upon the motion for summary judgment shows the defendant's employees did not know of the boy's presence but knew that in the past persons had been swimming and fishing in its waters. Photographs in evidence showed that there were located on the power plant and dam above the place where the boy drowned two large warning signs which stated: "Danger. For your own safety please keep out. Rough waters. Gates at dam operate automatically." The Act of 1965 (Ga.L.1965, p. 476; Code Ann. § 105–403) limits the lia-

bility of an owner of land who "directly or indirectly invites or permits without charge any person to use such property for recreational purposes." In our opinion the statute is not applicable where, as here, the use of the land was expressly denied to the deceased boy by the posting of "keep out" signs in the area. Accordingly, the decision of the Court of Appeals is reversed and the case returned to that Court for further consideration.

194 S.E.2d at 440–441.

The Georgia statute is identical to 7 *Del.C.*, ch. 59. *See also North v. Toco Hills, Inc.*, Ga.Ct.App., 160 Ga.App. 116, 286 S.E.2d 346 (1981), applying but distinguishing *McGruder*, stating that an owner's express denial of the use of his land for recreational purposes clearly indicates that the property is not available for recreational use.

In *Johnson v. Stryker Corp.*, Ill.Ct.App., 70 Ill.App.3d 717, 26 Ill.Dec. 931, 388 N.E.2d 932 (1979), a trespassing teenager suffered fatal injuries after diving into a shallow pond on defendant-owner's property. The owner had also permitted his lands to be used for recreational purposes on a casual basis by some, but not all, of the general public. The Illinois act's statement of purpose and equivalent section to Delaware's § 5903 are identical. The court held that the Illinois recreational use statute, Ill.Rev.Stat.1971, ch. 70, ¶ 31, et seq., barred the suit, reasoning, in part:

> It is true that the purpose of the statute is to encourage landowners to open up their property to members of the public.

**10.** Michigan and New Jersey decisional law is based on recreational use statutes that fall under variations *one* and *three* described above. The Michigan statute is simply described as an act "restricting suits by persons coming upon the property of another for [outdoor recreational use without payment—for injuries sustained]. Compare with the title to 7 *Del.C.*, ch. 59. See part II above. There is no statement of purpose equivalent to Delaware's § 5901 nor any section equivalent to Delaware's § 5904. The New Jersey statute, titled, "Landowners' Liability", N.J.S.A. 2A: 42A–2 et seq., not only omits the model act's statement of purpose but expressly applies to "premises whether or not posted." (2A: 42A–

3) Thus, the New Jersey courts have determined that the purpose of the New Jersey statute is to put trespassers and licensees on an equal footing. *Krevics v. Ayars*, N.J.Super.App. Div., 141 N.J.Super. 511, 358 A.2d 844 (1976). *See Harrison v. Middlesex Water Co.*, N.J.Super. App.Div., 158 N.J.Super. 368, 386 A.2d 405 (1978), *rev'd on other grounds*, 80 N.J. 391, 403 A.2d 910 (1979). Similarly, the Michigan statute has been construed as not differentiating between trespassers, licensees or invitees. *Graham v. County of Gratiot*, Mich.Ct.App., 126 Mich.App. 385, 337 N.W.2d 73 (1983); *Taylor v. Mathews*, Mich.Ct.App., 40 Mich.App.74, 198 N.W.2d 843 (1972).

That does not mean the legislature intended to limit the application of the statute only to the landowners who open their lands to all members of the public. Many of these landowners are farmers who could hardly afford to open the land to everyone at all times of the year.... No landowner would allow all persons to use the property at all times. ... It is more reasonable to believe that the legislature, being aware of the growth of the doctrine of attractive nuisance ... wish to protect landowners whose property is used gratutitously, with or without their permission for recreational purposes.[11]

In *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981), the Nebraska statute, Neb.Rev.Stat. §§ 37–1001 to 1008 (Reissue 1978), which departs in only minor respects from the model act, was applied to bar a personal injury claim occurring in a municipally-owned park open to the public.

In *Hahn v. United States*, M.D.Pa., 493 F.Supp. 57 (1980), the plaintiff was injured when he fell into a hole while fishing on property owned by the federal government. The land was found to be unposted, not patrolled and ostensibly open to the public. The Pennsylvania recreational use statute, 68 P.S. §§ 447–1, et seq. (identical to 7 *Del.C.*, ch. 59), was applied to bar recovery.

### B.

The conclusions we draw from our analysis of the statutes and case law on recreational torts in forty-six other jurisdictions are:

(1) that decisional law barring claims of trespassers as well as invitees and applying to posted as well as unposted lands is confined—almost exclusively—to jurisdictions, unlike Delaware, that have adopted variations *one* or *three* of the model act;

(2) that the legislatures of those jurisdictions have elected to shift the model act's emphasis *from* that of a limited measure to "encourage" the opening of private lands for recreational use *to* a "protectionist" oriented broad-form measure designed to immunize all owners of covered lands from tort liability to strangers injured in the course of recreational pursuits;

(3) that there are few decisions applying variation *four* statutes—like 7 *Del.C.*, ch. 59—to a given set of facts bearing any resemblance to the instant case; and

(4) that the existence of an apparent split of authority within those jurisdictions—Georgia and Illinois—leaves us with no reason to conclude that our construction of the Delaware statute is not correct.

However, for the reasons previously stated, we expressly decline to decide whether 7 *Del.C.*, chapter 59 will ultimately prove a bar to recovery and leave that question to the Superior Court to determine.

\*　　\*　　\*

Affirmed.

**11.** The Illinois court's line of reasoning is similar to that employed by the California courts

referred to in footnote 8 above.