# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| TESARO, INC., and TESARO DEVELOPMENT, LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2025-1357-KSJM |
| ANAPTYSBIO, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: March 4, 2026
Date Decided: April 24, 2026

David E. Ross, Eric D. Selden, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Stephen J. Kastenberg, William B. Igoe, Elizabeth P. Weissert, Paul K. Ort, BALLARD SPAHR LLP, Philadelphia, PA; Paul Spagnoletti, Brett M. McMahon, Ryan W. Cooke, Marie Killmond, DAVIS POLK & WARDWELL LLP, New York, NY; *Counsel for Plaintiffs Tesaro, Inc. and TESARO Development, Ltd.*

Ryan D. Stottmann, Brian P. Egan, Alec F. Hoeschel, Andrew Schoen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Robert Counihan, Vanessa Park-Thompson, Nicholas Klenow, FENWICK & WEST LLP, New York, NY; *Counsel for Defendant AnaptysBio, Inc.*

**McCORMICK, C.**

The parties dispute their rights and obligations under a collaboration agreement. The collaboration agreement contains a dispute resolution provision. On October 7, 2025, the defendant sent notice to the plaintiffs teeing up the dispute as required by the dispute resolution provision. The parties then agreed to a standstill period to negotiate a resolution. Negotiations failed. On the day that the standstill period expired, the parties filed mirror-image claims under the collaboration agreement. The plaintiffs in this action also alleged that the defendant's October 7 letter evidenced repudiation and asserted a claim of anticipatory breach.

The defendant has moved to dismiss the claim of anticipatory breach on two grounds. First, the defendant argues that the complaint fails to state a claim. Second, the defendant argues that the claim of anticipatory breach should be dismissed under Delaware's recently amended anti-SLAPP statute. This decision grants the defendant's motion to dismiss on the first ground—the plaintiffs failed to allege that the defendant conveyed repudiation with unequivocal, positive, and unconditional words or conduct, as required under Delaware law. This decision rejects the defendant's argument under the anti-SLAPP statute. To have a claim struck under the anti-SLAPP statute, a movant must establish a nexus between the cause of action and the protected activity. Here, the defendant has not established the relevant nexus because the claim of anticipatory breach arises from the act of repudiation, not the October 7 letter allegedly evidencing the repudiation.

# I.    FACTUAL BACKGROUND

The facts are drawn from the Complaint,[1] the documents it incorporates by reference, and facts subject to judicial notice.[2]

AnaptysBio, Inc. owns proprietary technology to discover antibodies used to treat diseases. Tesaro, Inc. (together with its wholly owned subsidiary Tesaro Development, Ltd., "Tesaro") develops and commercializes transformational medicines that improve, sustain, and extend the lives of cancer patients. Tesaro is a wholly owned subsidiary of GlaxoSmithKline LLC (together with its non-Tesaro affiliates, "GSK"). On March 10, 2014, AnaptysBio and Tesaro entered into a Collaboration and Exclusive License Agreement (the "Collaboration Agreement").[3] The parties made at least three amendments to the Collaboration Agreement.[4]

The Collaboration Agreement governs the parties' rights and obligations to a cancer therapy called dostarlimab, which is marketed under the brand name Jemperli. In July 2025, Tesaro and GSK told AnaptysBio that they had designed and approved a Phase 3 clinical trial that would allow physicians to combine one of GSK's antibody drug conjugates with either dostarlimab or Keytruda.[5] Keytruda is a dostarlimab competitor. Because the clinical trial could enrich a dostarlimab

---

[1] C.A. No. 2025-1357-KSJM, Docket ("Dkt.") 1 (Compl.).

[2] The court takes judicial notice of the stipulated status quo. Dkt. 6; *see also In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006) ("The trial court may . . . take judicial notice of matters that are not subject to reasonable dispute.").

[3] Compl., Ex. 1 (Collaboration Agreement).

[4] *See* Compl., Ex. 2 (Amendment No. 3).

[5] Compl. ¶¶ 62–63. Keytruda is the brand name for pembrolizumab. *Id.* ¶ 2.

competitor or the drug it combines with, AnaptysBio viewed its launch as a breach of Tesaro's duty to seek dostarlimab's "optimum commercial return" under the Collaboration Agreement.[6]

Section 4.6(c) of the Collaboration Agreement contains a dispute resolution provision, requiring that in the event that the parties dispute whether Tesaro was in breach, the matter would be escalated to AnaptysBio's and Tesaro's senior management. If those officers could not resolve the dispute within 30 days of escalation, the parties could serve a notice of termination under Section 14.2 of the agreement or file a lawsuit.[7] Consistent with that provision, AnaptysBio sent a letter to Tesaro and GSK on October 7, 2025. The letter states:

> This letter provides notice of Tesaro's material breaches under Section 4.6(c) of the Collaboration Agreement and initiates the 30-day dispute resolution process set forth therein. Tesaro has breached the Collaboration Agreement in at least three material ways. *First*, by knowingly participating in past, ongoing, and imminent prohibited clinical trials of [competitors]. *Second*, by failing to use commercially reasonable efforts to obtain the optimum commercial return for dostarlimab. And *third*, by concealing development activities related to dostarlimab from AnaptysBio. Tesaro's conduct breaches at least Sections 3.2(b), 4.6(b), 5.3(b), 5.3(e), and 8.1.[8]

---

[6] Compl. Ex. 4 ("October 7 Letter") at 7–8.

[7] Amendment No. 3 § 4.6(c).

[8] October 7 Letter at 2 (emphasis in original).

AnaptysBio told Tesaro that it "expect[ed] the parties to work toward a resolution of [Tesaro's] material breaches by November 6, 2025," which tracks the Collaboration Agreement's 30-day negotiation period.[9]

AnaptysBio further stated that "[i]f no resolution is reached within 30 days of this notice, AnaptysBio will provide Tesaro its notice of termination under Section 14.2 and exercise its reversion rights under Section 8.2."[10] Section 8.2 of the Collaboration Agreement governs the "reversion rights." It provides that if Tesaro fails to seek the "optimum commercial return" for dostarlimab, all licenses and rights granted to Tesaro for dostarlimab IP terminate and Tesaro automatically grants AnaptysBio an irrevocable, non-exclusive, worldwide license to patents and know-how for producing and selling dostarlimab.[11] Under Section 14.2, if a party sends a notice of termination asserting breach, the allegedly breaching party has 60 days to cure the breach.[12]

Tesaro responded on October 31, 2025 stating that if AnaptysBio pursued its claims and tried to enforce its rights, Tesaro would reduce royalty payments it owes AnaptysBio under the Collaboration Agreement and convert its licenses to AnaptysBio's IP into perpetual ones:

> Please be advised that TESARO will not tolerate AnaptysBio's efforts to leverage its false claims into a windfall. While TESARO is willing to discuss these matters in good faith in accordance with the Collaboration

---

[9] *Id.*; Amendment No. 3 § 4.6(c).

[10] October 7 Letter at 2.

[11] Collaboration Agreement §§ 8.1, 8.2, 14.4.

[12] *Id.* § 14.2.

4

Agreement's dispute-resolution provision, TESARO also reserves all rights under the Collaboration Agreement. That includes TESARO's explicit rights under Section 14.4(f) to convert its licenses into irrevocable, perpetual licenses and to reduce royalty and milestone payments by 50% as a result of AnaptysBio's threat to wrongfully terminate the Collaboration Agreement and the licenses granted to TESARO.[13]

Tesaro concluded its letter with a document retention demand.

AnaptysBio replied on November 3, 2025:

[Y]our clients' threat to invoke Section 14.4(f) to convert Tesaro's licenses into irrevocable ones and reduce royalties lacks credibility and is an improper attempt to scare AnaptysBio from exercising its lawful rights. . . . Instead, the apparent "breach" is no more than AnaptysBio pursuing its rights under the Collaboration Agreement, so the threat to invoke Section 14.4(f) seems designed only to quell AnaptysBio from petitioning the courts to enforce its rights. Such threats run afoul of clear Delaware law, including its anti-SLAPP statute[.][14]

In the cover email to AnaptysBio's letter, AnaptysBio proposed extending the 30-day negotiation period before it expired.[15] The parties agreed to extend the negotiation period until November 20, 2025 at 5:59pm ET by way of a Standstill

---

[13] Compl., Ex. 5 ("October 31 Response") at 2.

[14] Compl., Ex. 6 ("November 3 Letter") at 2–3.

[15] Dkt. 38 ("AnaptysBio Opening Br."), Ex. 6 ("November 3 Email"). AnaptysBio attached the November 3 Letter as an exhibit to the Complaint. *See* Compl. ¶ 87. The November 3 Letter was attached to a cover email dated November 3. The court can consider the November 3 Email along with the November 3 Letter because they are part of the same communication, and considering both documents is necessary to understand the complete context of the communication. *See General Motors*, 897 A.2d at 169.

Agreement.[16] The Standstill Agreement's purpose was "facilitate . . . good-faith attempts to resolve the Disputes."[17]

The parties filed mirror-image claims when the standstill period ended on November 20, 2025.[18] In this action, Tesaro asserts two Counts. In Count I, Tesaro seeks a declaratory judgment and an injunction concerning the parties' rights and obligations under the Collaboration Agreement. In Count II, Tesaro claims that AnaptysBio repudiated the Collaboration Agreement and committed anticipatory breach through the October 7 Letter. Tesaro also filed a motion to expedite proceedings and a motion for a temporary restraining order enjoining AnaptysBio from terminating the Collaboration Agreement.[19]

Five days after the parties commenced their respective actions, the parties signed and filed a stipulation to preserve the status quo through final judgment.[20] Under the stipulation, AnaptysBio will neither send Tesaro a termination notice nor attempt to exercise reversion rights.[21] Similarly, Tesaro agreed to neither seek to terminate the Collaboration Agreement nor attempt to reduce any amounts owed to

---

[16] Compl. ¶¶ 12, 19, 88; AnaptysBio Opening Br., Ex. 8 (Standstill Agreement).

[17] Standstill Agreement at 1.

[18] *See* Compl.; C.A. No. 2025-1355-KSJM, Dkt. 1.

[19] C.A. No. 2025-1357-KSJM, Dkt. 1.

[20] Dkt. 6.

[21] *Id.* ¶ 1(a).

AnaptysBio or obtain perpetual licenses to its IP.[22]  The court granted the stipulation the same day, preserving the status quo through final decision.[23]

AnaptysBio filed a partial motion to dismiss Count II for anticipatory breach on December 30, 2025.[24]  AnaptysBio filed its motion under Court of Chancery Rule 12(b)(6) and 10 *Del. C.* §§ 6001–14, Delaware's Uniform Public Expression Protection Act ("UPEPA" or the "Act").  Section 6003 of UPEPA requires that any motion filed under the Act be resolved within sixty days.[25]  The court thus expedited consideration of the partial motion to dismiss.  The parties briefed the motion and the court heard oral arguments on March 4, 2026.[26]

## II.    LEGAL ANALYSIS

AnaptysBio has moved to dismiss Tesaro's claim of anticipatory repudiation under Rule 12(b)(6) and Section 6003 of UPEPA.

### A.    Rule 12(b)(6)

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[27]  When considering a Rule 12(b)(6) motion, the court

---

[22] *Id.* ¶ 1(b).

[23] *Id.*

[24] Dkt. 37.

[25] 10 *Del. C.* § 6008.

[26] AnaptysBio Opening Br.; Dkt. 47 ("Tesaro Answering Br."); Dkt. 52 ("AnaptysBio Reply Br."); Dkt. 74.  Tesaro argued that AnaptysBio's anti-SLAPP argument automatically stayed discovery in all proceedings, including the related action filed by AnaptysBio.  The court rejected that argument in a bench ruling on March 6, 2026. Dkt. 95.

[27] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[28] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[29]

"[R]epudiation [of a contract] is an outright refusal by a party to perform a contract or its conditions[.]"[30] Repudiation occurs when a party "takes an action that constitutes a 'significant and substantial alteration of both the present and reasonably anticipated future relations created by the agreement.'"[31] "Repudiation may be accomplished through words or conduct."[32] A promisor can repudiate by communicating an outright refusal.[33] A promisor can also repudiate by communicating an "intent not to perform unless terms different from the original

[28] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[29] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009), *overruled on other* grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018)).

[30] *Clark v. State Farm Mut. Auto. Ins. Co.*, 131 A.3d 806, 811 (Del. 2016); *CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000).

[31] *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1014 (Del. Ch. 2004) ("*PAMI*") (quoting *Bali v. Christiana Care Health Servs.*, 1998 WL 685380, at *1 (Del. Ch. Sep. 22, 1998)).

[32] *W. Willow-Bay Ct., L.L.C. v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *5 (Del. Ch. Feb. 23, 2009).

[33] *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *15 (Del. Ch. Sep. 18, 2014).

contract are met[.]"[34]    To survive dismissal, a complaint must allege that the promisor conveyed repudiation with "unequivocal . . . positive, and unconditional" words or conduct.[35]

AnaptysBio argues that the Complaint fails to state a claim for repudiation to the extent Tesaro relies on AnaptysBio's October 7 communication as a basis for the claim. In the October 7 letter, AnaptysBio wrote to Tesaro to "provide[] notice of Tesaro's material breaches under Section 4.6(c) of the Collaboration Agreement" and "initiate[] the 30-day dispute resolution process[.]"[36] Although the letter expresses an intent to send a "notice of termination," AnaptysBio conditioned termination on the parties failing to resolve their disagreement under the Collaboration Agreement's dispute resolution provision.[37] This letter did not convey an unconditional intent to never perform. Rather, the notice of termination was expressly conditioned on the contract dispute process. Because it was expressly conditioned on a process designed to eliminate the need for termination, the October 7 letter did not evidence repudiation.

Tacitly conceding this point, Tesaro argues that a promisor can also repudiate by communicating an "intent not to perform unless terms different from the original

---

[34] *PAMI-LEMB I*, 857 A.2d at 1014; *see also* 13 *Williston on Contracts* § 39.40 (4th ed. 2025) (explaining that to constitute a repudiation, a "demand must be accompanied by a clear expression of intent not to perform under any other interpretation").

[35] *Veloric*, 2014 WL 4639217, at *15 (internal quotations omitted).

[36] October 7 Letter at 2.

[37] *Id.* at 2, 9 ("Tesaro has 30 days under Section 4.6(c) to work toward a resolution of these breaches with AnaptysBio.").

contract are met."[38]  According to Tesaro, the October 7 letter implied a demand that Tesaro accept AnaptysBio's terms or proposed concessions.  Those concessions, in Tesaro's view, changed the terms of three aspects of the Collaboration Agreement— the exclusivity provisions, the efforts provision, and the notice provision.[39]

But a careful read of the letter reveals AnaptysBio's good-faith disagreement on the requirements of the Collaboration Agreement, not a unilateral demand to alter those terms.  The October 7 letter states that AnaptysBio sought to use the 30-day dispute resolution period to resolve Tesaro's breaches.  And AnaptysBio describes, in several factually laden pages, how Tesaro's actions breached existing requirements under the Collaboration Agreement.[40]  As to each issue raised in the letter, AnaptysBio attempts to apply the terms of the Collaboration Agreement to Tesaro's conduct.  At no point in the letter does AnaptysBio demand new terms or suggest that it seeks to add additional obligations to those described in the Collaboration Agreement.  AnaptysBio did not express, in unequivocal, positive, and unconditional words or conduct, that it would not perform unless Tesaro agreed to new terms and conditions.

---

[38] Tesaro Answering Br. at 18 (quoting *PAMI-LEMB I*, 857 A.2d at 1014).

[39] *Id.* at 19–27.

[40] October 7 Letter at 5–8.

Tesaro relies on two decisions of this court—*PAMI-LEMB Inc. v. EMB-NHC, L.L.C.*[41] and *Darby Emerging Markets Fund, L.P. v. Ryan.*[42]  Each case is distinguishable.

*PAMI-LEMB I* does not support Tesaro's position.  That case concerned a dispute between partners "over the interpretation and enforcement of identical buy/sell provisions . . . governing distribution of partnership proceeds in a series of partnership agreements."[43]  The counterclaim-plaintiff invoked buy/sell provisions constituting an offer to sell its interests to the counterclaim-defendant, Lehman Brothers.  The counterclaim-plaintiff argued that the sale price was $5.7 million.  Applying a different accounting measure, Lehman Brothers viewed the sale price as $1.5 million.  Lehman further stated that if the counterclaim-plaintiff refused to accept the $1.5 million figure, Lehman would "litigate and assert that [counterclaim-plaintiff] was entitled to nothing."[44]  The court found repudiation there because the repudiating party demanded that it pay less than what the contract expressly required or, absent agreement to a reduced payment, it pay nothing at all.  Here, AnaptysBio invoked its right to start the contract's dispute resolution process and laid out the basis for its claims of breach.  Tesaro cannot claim repudiation merely because Tesaro disagrees with AnaptysBio's contractual position.

---

[41] 857 A.2d 998 (Del. Ch. 2004).

[42] 2013 WL 6401131 (Del. Ch. Nov. 27, 2013).

[43] *PAMI-LEMB I*, 857 A.2d at 1001.

[44] *Id.* at 1013.

11

*Darby* is similarly inapposite. That case concerned a put right under a shareholder agreement that could be exercised in the event of a fundamental dispute concerning the management of the business.[45] After a dispute arose, and in the course of "dispute resolution" negotiations, the defendants insisted that the plaintiff-shareholder waive its put right as part of any resolution.[46] Upon conclusion of the dispute-resolution period, the plaintiff-shareholder sued for anticipatory breach of the shareholder agreement.[47] This court held that the allegation that the defendants would not perform "on the terms and conditions set forth" in the shareholder agreement "support[s] a reasonable inference that Defendants have positively and unconditionally repudiated their obligations to honor" the put right.[48] Here, AnaptysBio neither asked Tesaro to waive any rights nor said it would not comply with its own duties. Rather, it invoked the contract dispute resolution process.[49]

Because the October 7 letter alone does not support a claim for repudiation, Tesaro points to the November 3 Letter. Tesaro did not identify the November 3

---

[45] *Darby,* 2013 WL 6401131, at *2.

[46] *Id.* at *4.

[47] *See id.* at *4, *12.

[48] *Id.* at *11.

[49] Tesaro cites to two other decisions that are similarly inapposite. *See* Tesaro Answering Br. at 20, 30 (citing *UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697 (Del. Ch. Dec. 14, 2005) and *EMSI Acquisition, Inc. v. Contrarian Funds, LLC*, 2017 WL 1732369 (Del. Ch. May 3, 2017)). In *UbiquiTel*, the plaintiff alleged that the repudiating party acknowledged that its conduct would violate duties to the plaintiff. *UbiquiTel,* 2005 WL 3533697, at *7. And *EMSI Acquisition* did not address breach of contract or repudiation at all. *See generally EMSI Acquisition*, 2017 WL 1732369.

12

Letter as a basis for its claim in the Complaint.[50] The letter does not evidence repudiation in any event. There, AnaptysBio stated that "[n]othing in [Tesaro's response] changes [AnaptysBio's] view" or will "dissuade AnaptysBio from exercising its right to dostarlimab's reversion."[51] A threat to exercise contractual rights in the event of breach is not repudiation, even if that contractual right is reversion. Quite the opposite—exercising contractual rights under an agreement requires affirming that agreement.

Even assuming that AnaptysBio's October 7 and November 3 supported a claim for repudiation, the Collaboration Agreement provides a 60-day cure period.[52] That period ran at least until December 6, 2025. Delaware law allows a party to retract a repudiation, "nullifying" it and "placing the matter in its original position."[53] A party may do so if the time for performance has not lapsed and the non-repudiating party "treats the contract as still in force."[54] A request for specific performance demonstrates "that the promisee treats the mutual obligations as being still in force."[55] And continued performance by the alleged repudiator, including through negotiations pursuant to a contract, constitutes revocation.[56]

---

[50] *See* Compl. ¶¶ 106–12.

[51] November 3 Letter at 1.

[52] Collaboration Agreement § 14.2.

[53] *Carteret Bancorp, Inc. v. Home Gp., Inc.*, 1988 WL 3010, at *6 (Del. Ch. Jan. 13, 1988).

[54] *Id.*

[55] *Id.*

[56] *West Willow-Bay Ct.*, 2009 WL 458779, at *6 (holding that defendant "retracted" repudiation by "resum[ing] negotiations").

13

AnaptysBio continued to perform under the contract after the events Tesaro claims constitute repudiation. Tesaro confirmed the Collaboration Agreement was effective on November 20, 2025 by filing a motion to enjoin AnaptysBio from sending a termination notice. Tesaro's motion confirms that Tesaro treated the parties' "mutual obligations as being still in force."[57] Tesaro stated that "Tesaro seeks . . . a TRO enjoining AnaptysBio from terminating the Collaboration Agreement[.]"[58] And the parties reaffirmed that the contract remained effective when stipulating to preserve the status quo.[59] Under the stipulation, no party will "issue any notice of termination" until a final judgment.[60] Any repudiation stemming from AnaptysBio's October 7 or November 3 letters was effectively cured or revoked before the 60-day cure period lapsed and before Tesaro treated the contract as terminated.

For these reasons, Count II of the Complaint fails to state a claim for repudiation. AnaptysBio's motion to dismiss under Rule 12(b)(6) is granted.

## B.    Anti-SLAPP Motion

On September 15, 2025, Delaware adopted UPEPA.[61] The Uniform Law Commission created that model act to enhance protections from strategic lawsuits

---

[57] *Carteret Bancorp, Inc.*, 1988 WL 3010, at *6.

[58] Dkt. 1 ("Tesaro TRO Br.") at 5.

[59] Dkts. 4, 6.

[60] Dkt. 6 ¶ 1(a)–(b).

[61] *See* 10 *Del. C.* §§ 6001–14. The Delaware UPEPA is essentially a carbon copy of the model act. Sections 6001–14 of UPEPA correspond with §§ 1–14 of the model act.

against public participation ("SLAPPs").[62] SLAPPs are meritless lawsuits brought to "ensnare their targets in costly litigation that chills society from engaging in constitutionally protected activity."[63]

UPEPA provides procedural relief to those opposing a SLAPP claim. Section 6003 of UPEPA authorizes a "special motion" to dismiss a SLAPP claim.[64] Motions brought under Section 6003 are statutorily expedited.[65] Because UPEPA entitles a successful movant to costs, attorneys' fees, and expenses, granting the Rule 12(b)(6) does not obviate the need to resolve AnaptysBio's anti-SLAPP motion.[66]

Section 6007(a) establishes the elements of a special motion under Section 6003. A special motion proceeds in three parts. First, the moving party must "establish[] under § 6002(b) or (d) of this title that this chapter applies."[67] Second, the responding party must fail to demonstrate that the challenged conduct is among the carve-outs listed in Section 6002(c).[68] Third, the moving party must show that its anti-SLAPP argument has merit because the responding party failed to establish a

---

[62] Unif. Pub. Expression Prot. Act, prefatory n. at 3 (Unif. L. Comm'n, Draft Oct. 2, 2020).

[63] *Id*. at 1.

[64] 10 *Del. C.* § 6003.

[65] *Id.* § 6005, 6008.

[66] *Id.* § 6010(a)(1).

[67] *Id.* § 6007(a)(1).

[68] *Id.* § 6007(a)(2) ("The responding party fails to establish under § 6002(c) of this title that this chapter does not apply[.]").

prima facie case or state a claim, or the movant demonstrated based on the undisputed facts that it would be entitled to summary judgment as a matter of law.[69]

The second and third parts of Section 6007(a) are not in play here. Tesaro does not advance arguments regarding carve-outs under § 6002(c). And AnaptysBio has demonstrated that Tesaro fails to state a claim for anticipatory repudiation. The analysis thus hinges on the first part of Section 6007(a).

Courts have interpreted the first part of Section 6007(a) as imposing two requirements. A movant must demonstrate that it engaged in a protected activity under § 6002(b) or (d). The movant must also establish a nexus between the cause of action and the protected activity—that is, that "the responding party's suit arises from the movant's constitutionally protected activity."[70]

---

[69] *Id.* § 6007(a)(3) ("Either: the responding party fails to establish a prima facie case as to each essential element of the cause of action; or the moving party establishes that (1) the responding party failed to state a cause of action upon which relief can be granted; or (2) there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action." (cleaned up)).

[70] Unif. Pub. Expression Prot. Act § 7 cmt. 2 (citing Thomas R. Burke, *Anti-SLAPP Litigation* § 3.2 (2019)); *see also id.* ("[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail it as one arising from such." (quoting *Navellier v. Sletten*, 52 P.3d 695, 708–09 (Cal. 2002))). As it did when denying Tesaro's request to stay proceedings, *see* Dkt. 95, the court relies on the Uniform Law Commission's official comments to the model act in interpreting UPEPA. *See Gibson v. Keith*, 492 A.2d 241, 247–48 (Del. 1985) (finding official commentary from drafters of a model act persuasive in interpreting the act as enacted in the Delaware Code); *Cannon v. Romeo Sys., Inc.*, 2025 WL 2848069, at *20 n.164 (Del. Ch. Oct. 7, 2025) (explaining that Delaware courts refer to the official comments to the UCC in interpreting its counterparts codified in Delaware statutes).

16

The conduct at issue concerns AnaptysBio's prelitigation communications—the October 7 and November 3 letters. AnaptysBio argues that those communications constituted protected activity under Section 6002(b)(2) and that the claim of anticipatory breach arises from those communications. Even if the prelitigation communications constitute protected activity,[71] AnaptysBio fails to demonstrate the requisite "arises from" nexus.

A cause of action "arises from" protected activity if the "conduct underlying the [] cause of action" was "*itself* an act in furtherance of the right of petition or free speech."[72] Put differently, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step

---

[71] The court assumes this for the sake of argument without resolving the issue, which is complicated. Section 6002(b)(2) of UPEPA makes any "[c]ommunication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding" protected activity. 10 *Del. C.* § 6002(b)(2). Courts have construed this provision to include prelitigation communications. *See Nirschl v. Schiller*, 308 Cal. Rptr. 3d 338, 348 (Cal. Ct. App. 2023); *Trinity Risk Mgmt., LLC v. Simplified Lab. Staffing Sols., Inc.*, 273 Cal. Rptr. 3d 831, 838–39 (Cal. Ct. App. 2021); *see also Sheehan v. Assured P'rs, Inc.*, 2020 WL 2838575, at *16 (Del. Ch. May 29, 2020) (discussing the absolute litigation privilege). But prelitigation communications "do not qualify as a protected activity if future litigation is not anticipated, and is therefore only a 'possibility'—and this is true even if the communication is a necessary prerequisite to any future litigation." *Mission Beverage Co. v. Pabst Brewing Co., LLC*, 223 Cal. Rptr. 3d 547, 559 (Cal. Ct. App. 2017). Thus, not every communication sent in anticipation of litigation constitutes protected activity. *See Nirschl*, 308 Cal. Rptr. 3d at 348.

[72] Burke, *supra,* § 3.3 (emphasis in original) (internal quotation marks omitted) (first quoting *City of Cotati v. Cashman*, 52 P.3d 695, 701 (Cal. 2002); then citing *Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685, 693 (Cal. 2002)); *see also Park v. Board of Trustees of California State Univ.*, 393 P.3d 905, 908 (Cal. 2017) (stating that a movant satisfies the nexus requirement "when th[e] activity underlies or *forms the basis* for the claim" (emphasis added)); *Hastings Coll. Conservation Comm. v. Faigman*, 309 Cal. Rptr. 3d 451, 457–59 (Cal. Ct. App. 2023).

leading to some different act for which liability is asserted."[73] The protected activity must be the "injury-producing conduct."[74] Defamation claims present the quintessential example. There, the protected activity is the act of speech, which "itself is the wrong complained of" in the claim of defamation.[75]

There is a distinction between "speech that provides the basis for liability and speech that provides evidence of liability."[76] A communication that serves merely as evidence of a complained-of wrong is not itself the injury-producing conduct.

*Mission Beverage Co. v. Pabst Brewing Co., LLC* is instructive.[77] There, a brewing company sent a letter to one of its distributors terminating their distributor agreement and commencing a statutory negotiation procedure to determine the fair market value of the affected distribution rights.[78] The distributor sued the brewing company, alleging that the brewing company breached the contract by "attempting" to terminate the agreement and seeking a declaratory judgment that there was no valid termination of the agreement.[79] The brewing company filed a motion to strike the complaint under California's anti-SLAPP statute.

---

[73] *Park*, 393 P.3d at 907 (emphasis in original).

[74] *Laker v. Bd. of Trs. of Cal. State Univ.*, 244 Cal. Rptr. 3d 238, 266 (Cal. Ct. App. 2019) (citation modified).

[75] *See, e.g.*, *Abir Cohen Treyzon Salo, LLP v. Lahiji*, 254 Cal. Rptr. 3d 1, 4–6 (Cal. Ct. App. 2019); *Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 137 Cal. Rptr. 3d 455, 467–66 (Cal. Ct. App. 2012); *see also Scott v. Metabolife Int'l, Inc.*, 9 Cal. Rptr. 3d 242, 253 (Cal. Ct. App. 2004) ("[D]efamation suits are a prime target of SLAPP motions.").

[76] *Park*, 393 P.3d at 909.

[77] 223 Cal. Rptr. 3d 547 (Cal. Ct. App. 2017).

[78] *Id.* at 552.

[79] *Id.* at 553.

A California appellate court affirmed the trial court's denial of the motion. The appellate court held that the distributor's claims challenged the brewing company's attempt to terminate the distributor agreement, but the brewing company's letter "merely communicated [the] decision to terminate, [and] that communication does not convert [the distributor's] suit into one arising from such speech."[80] The court stated: "[The distributor's] claims attack [the brewing company's] decision to repudiate the Agreement; as noted above, the fact that the repudiation was communicated through a letter does not alter the basis of those claims."[81]

So too here. The wrong complained of in Tesaro's claim of anticipatory breach is AnaptysBio's supposed repudiation. The protected activities—the prelitigation communications—are not the alleged wrong, they are at most evidence of it.

AnaptysBio attempts to distinguish *Mission Beverage* because there the defendant "'attack[ed] [defendant's] decision to repudiate the agreement,'—not the defendant's protected communications."[82] By contrast, here, Tesaro claims to rely on the October 7 and November 3 the communications to show that "AnaptysBio's *unequivocal and protected statements* caused the purported repudiation."[83] But this is the precise argument that the *Mission Beverage* court rejected. The nexus requirement of Section 6003 motions requires that the protected activity be the cause of the injury. How a party communicates repudiation does not render the

---

[80] *Id.* at 557 (citation modified).

[81] *Id.* at 558.

[82] AnaptysBio Reply Br. at 27 (quoting *Mission Beverage*, 223 Cal. Rptr. 3d at 702).

[83] *Id.* (emphasis in original).

communication the injury-producing action. Put differently, no matter how the decision to repudiate was conveyed, the injury in a claim for anticipatory breach is the act of repudiation—not the way it was communicated.

## III. CONCLUSION

AnaptysBio's Rule 12(b)(6) motion is granted. AnaptysBio's Section 6003 motion is denied. Tesaro argues that it is entitled to fees and costs it incurred in responding to AnaptysBio's anti-SLAPP motion.[84] UPEPA permits a successful nonmoving party to recover fees and costs if the motion was "frivolous or filed solely with intent to delay the proceeding."[85] That was not the case here. This is a case of first impression in Delaware courts, and the motion was filed and argued in good faith. Each party must bear its own fees and costs.

---

[84] Tesaro Answering Br. at 55–56.

[85] 10 *Del. C.* § 6010(a)(2).

20